# Seibert *against* Butz.

An action for a legacy being a substitute for a bill in equity, is to be so managed as to take effect without hindrance from common-law technicalities. Hence, an action brought in the name of executors, for the use of a legatee against a legatee, to recover the one third of a legacy which had been limited over upon a contingency to three legatees, will not be defeated by the plea of a former recovery by the same executors for the use of another of the three legatees.

A testator bequeathed legacies to his three daughters, and added, "Should one of my daughters die without heirs or testament, then her inheritance shall lapse in equal shares to my yet living daughters, or to the heirs of their body, in equal shares, yet that it may not be misunderstood, the sister's share to her children:" *Held*, that the contingency was not too remote to take effect.

ERROR to the common pleas of *Berks* county.

Peter Butz and John Butz, for the use of Joseph Delong and Susanna his wife, late Susanna Butz, against Jacob Seibert. This was an action of assumpsit, to which the defendant pleaded *non assumpsit* and a former recovery.

The plaintiff thus set out his case:

"Jacob Seibert, late of the county aforesaid, yeoman, was attached to answer John Butz and Peter Butz, for the use of Joseph Delong and Susanna his wife, late Susanna Butz, of a plea of trespass on the case, and so forth, and thereupon the said John and Peter, by John S. Gibbons their attorney, complain, That whereas heretofore, to wit: on the 18th day of February 1821, Samuel Butz, of Long Swamp township, in the county aforesaid, made and executed his last will and testament, which was duly approved, proved and insinuated before Peter Aurand, Esq., register for the probate of wills and granting letters of administration in and for the said county of Berks, by which will the said Samuel Butz bequeathed, *inter alia*, as follows, to wit:

"'This above described money of my two sons, Peter Butz, of

North Whitehall, Lehigh county, and John Butz, of Long Swamp township, Berks county, state of Pennsylvania, altogether shall come, after deducting the costs, unto my four daughters, or to their heirs, viz: the oldest, Catharine, intermarried to Jacob Seibert; the second, Susan, intermarried to Joseph Delong; the third, intermarried to David Weiser, named Esther; the fourth, Maria, intermarried to Daniel Folk. All the above mentioned, and what will be found in cash, bonds, and notes, and all that what shall accrue out of my personal property after my decease, shall be divided in equal shares, unto my four daughters or their heirs, as afterwards shall be mentioned. My youngest daughter Maria shall have before her full share of house furniture, now defective, until she has as much as her other sisters. It is written down what each received, and likewise what she (the youngest) has received already, the rest what she still wants, she shall first have before it goes to a division. As soon as she has her full share, then it shall as follows be divided in equal shares. My three oldest daughters or her husbands having each of them given a bond unto me, but no interest from the commencement to the delivery of the bond shall be charged therefor. Each of these bonds amounts to the sum of one hundred pounds, and shall be charged to the bequests and receipts which will be found from each of the three oldest daughters or her husbands, so that each of the three oldest daughters two hundred and fifty pounds has already received on her inheritance.

" ' All what is left after my decease shall be divided amongst my four daughters. If all debts or costs are paid thereout, that what is received in money for bonds, notes, book debts, and personal property, shall, as before mentioned, come all to my four daughters in equal shares. But all that what they or her husbands have already received, for which receipts or bonds shall be found, and also likewise what my youngest daughter Maria shall pay for her land, shall be charged to her inheritance. My four daughters shall take from my empowered executors her inheritance in bonds and notes as it is outstanding within one year after my decease divide so much in equal parts. Should after this division some be lost, the one shall lose as much as the other, with this condition, that each of them as soon as she has the bonds has to provide for security, say to try to receive it or be careful for good bail. Should one of my daughters die without issue or will, in that case her inheritance shall come to my others daughters then living, or to her offspring, in equal shares, but to prevent misunderstanding, the share of the sister to her children. Further, it is to mention that if my four daughters my personal property of house furniture, or what shall be left, can divide amongst them, or amongst themselves, one share or the whole by vendue sale, they shall have full power for the same, what they cannot divide shall be sold at public vendue. When my hereinafter named executors shall give the bonds and notes unto my daughters or their heirs, they shall give complete releases unto my executors.

My daughters shall have no right to inherit until they have given releases unto my executors.'

" And the said John and Peter aver that after the probate of the said will they paid to the said Jacob the sum of 10,000 dollars, under and pursuant to the directions of the said will, and the said plaintiffs further aver, that Catharine, the wife of the defendant, died on the 5th day of April 1832, intestate, and without issue.

" And whereas, also, the said Jacob, afterwards, to wit, on the 5th day of April 1832, in the county aforesaid, was indebted to the said plaintiffs in the further sum of 10,000 dollars, lawful money of the United States, for so much money by the said Jacob before that time had and received, to and for the use of said plaintiffs, and being so indebted, he, the said Jacob, in consideration thereof, afterwards, to wit, on the day and year aforesaid, undertook, and then and there faithfully promised the said plaintiffs, to pay them the said last mentioned sum of money, when he, the said Jacob, should be thereunto afterwards requested.

" Nevertheless, the said Jacob, not regarding his promises and undertakings as aforesaid, hath not as yet paid the said several sums of money, or any part thereof, to the said plaintiffs, although often required so to do, but the said Jacob to pay them the same hath hitherto wholly neglected and refused, and still doth neglect and refuse, to the damage of the said John Butz and Peter Butz of 10,000 dollars."

The plaintiffs gave in evidence the last will of Samuel Butz, deceased, dated the 8th day of February 1821, proved on the 31st day of August 1831; also the following evidence:

The inventory of the estate of said testator, filed the 31st day of August 1821, amounting to 13,965 dollars 9 cents.  The administration account of the executors, which was confirmed the 9th day of August 1822, amounting to 10,412 dollars 13 cents, credited in account as paid to the four daughters of the testator.  The release of the daughters and their husbands to the executors, dated the 22d day of November 1822.

It has been admitted that Catharine, one of the daughters of said testator, was married to the defendant.  That she died without issue and intestate. It was proved, on the part of the defendant, that Maria, one of the testator's daughters, who is intermarried with Daniel Folk, is living.  That Esther, who was intermarried with one Weiser, now deceased, is also living; and Susanna, the other daughter, intermarried with Joseph Delong.  These three daughters are still in full life.

The defendant gave in evidence the record of a suit, John Butz and Peter Butz, for the use of Daniel Folk and Maria his wife against Jacob Seibert, No. 43 of November term 1837, and the *fieri facias* issued thereon.  This suit was brought to recover the third part of the same sum which had been paid to Jacob Seibert during the lifetime of his wife by the executors.

[Seibert v. Butz.]

In said will is contained the following clause:—" Should one of my daughters die without heirs or testament, then her inheritance shall lapse in equal shares to my yet living daughters, or to the heirs of their body in equal shares; yet, that it may not be misunderstood, the sister's share to her children." The defendant received in right of his wife, from the executors, during her lifetime, as it would appear, upwards of 3000 dollars.

To recover one third of this sum, Delong and wife have brought this suit, in the name of the executors.

The court below thus charged the jury:

*Banks,* president.—" The right of Delong and wife to the one third of what the defendant received of said estate, would appear to be clearly established by the will. To recover this one third they have the right to use the name of the executors. Their right is derived from the will, and the executors must be placed on the record as the legal party.

" To this action the defendant has interposed the plea of former recovery. Mr Gibbons, who was counsel in the case which is relied on to support this plea, has stated that the suit, the record of which has been given in evidence, was brought to recover the one third, which was of right due to Folk and wife, and that but this one third was recovered in said action.

" This suit was brought for the use of Folk and wife. It would not have been proper to have recovered more in that action than what defendants had received for their use.

" I do not see why Folk and wife may not now show what money was sued for and recovered in that action; and further, that the money which the defendant recovered, and after the death of his wife held for their use, was not sued for—and was not, and could not have been recovered in that action.

" It would be strange indeed, that, because Folk and wife recovered what was due them, and no more, this should preclude the recovery by Delong and wife of what was due them.

" Delong and wife were not parties to the first suit, the money they now claim was not included in it. It would be aggravated injustice to them if the law was so, that that judgment forever barred the recovery of the debt in this action. The law is not so."

To this charge defendants' counsel excepted.

Errors assigned:

1. The court erred in charging the jury that the right of Delong and wife to one third of what the defendant received of the estate was clearly established by the will.

2. That the court erred in charging the jury that the record of the suit given in evidence was not a bar to plaintiff's recovery.

*Smith,* for plaintiff in error, cited 2 *Atk.* 308; 6 *Serg. & Rawle* 461; 5 *Watts* 120; 6 *Serg. & Rawle* 57; 4 *Serg. & Rawle* 246; 9

IX.—2 R*

*Serg. & Rawle* 429; 17 *Serg. & Rawle* 319; 2 *Stra.* 1259; 6 *Watts* 96. 309; 15 *Serg. & Rawle* 145; 5 *Serg. & Rawle* 409.

*Gibbons*, for defendant in error.

The opinion of the court was delivered by

GIBSON, C. J.—An action to recover a legacy, being a substitute for a bill in equity, is to be so managed as to take effect without hindrance from common law technicalities. It is immaterial to the beneficial plaintiff who was neither an actual nor potential party to the former suit, that the legal plaintiffs separately recovered another sister's share of the bequest over; and the only question deserving consideration is, whether the contingency is not too remote; but there is one circumstance indicative of an intention which shows very clearly that it is not. The contingency is one with a double aspect—death without issue and without a will—which must necessarily have happened, if at all, at the death of the first taker in one of two ways. The legacy was then to take a determinate direction for the future, either by the will of the father or the will of the daughter. The daughter's will would speak at her death, and the contingency of dying without issue was evidently so closely coupled, in the testator's apprehension, with the idea of her dying with or without one, as to have been inseparable from it; and though there may be an indefinite dying without issue, there can be no indefinite dying without a will. The legacy was to go to the survivors if the dying sister made no will and had no children; but if she made a will, or perhaps an appointment in the nature of one, it was to go to her appointee; but to either, necessarily, at her death. There is, perhaps, no case in which the limitation over of personal estate, after an indefinite dying without issue, whether the first limitation were indefinite or expressly for life, has, *ex vi termini*, been confined to a dying without issue at the time of the death; but the courts have seized with avidity on any circumstance, however trivial, denoting an intent to fix the contingency at that period. Here it is impossible to doubt of an intent to give the dying sister's share over, should she not have given it to some one else; and in this respect the case is much stronger than Target *v.* Gaunt, 1 *P. W.* 432, though it is very like it, in which a testator devised to his son for life, and no longer, and after his decease to such of the son's issue as the son should by will appoint; and in case the son should die without issue, then over; and on this will the words were interpreted to mean, issue living at the son's death, because such issue was intended by the use of the word where it last occurred, as the son might have appointed the term to; consequently, such issue was meant as might have been living at his death. Here the intention is, to say the least, equally clear; and the jury were properly instructed that the plaintiffs were entitled to recover.

Judgment affirmed.