# Ingersoll's Appeal.

1. Where a will merely provides that on the death of the first taker, " without issue or without leaving issue," the devise over shall take effect, the law construes these words to mean an indefinite failure of issue, but they may also be shown by other parts of the will to mean "issue living" at the death of the first taker.

2. Testatrix, by her will, bequeathed the residue of her estate to trustees, in trust for her two nieces, their heirs, executors, administrators and assigns, and directed the income to be invested until they reached the age of twenty-one, and after that the income to be paid to them quarterly, share and share alike, not subject to the debts or control of their husbands, in the event of marriage, and in the event that either of them should die, without issue, then her share should, subject to the trust, go to the survivor and her heirs, and should they or either of them die, leaving issue, the trustees to hold the estate for the uses which may be declared by them or either of them by last will : *Held*, that the words, "die without issue," meant a failure of issue at a definite period, to wit, the death of both of her nieces, and the trust was an active one.

3. The fact that the testatrix intended, as one of the objects of the trust, to create sole and separate estates for her nieces, then being unmarried, and not in contemplation of marriage, though that object be considered

[Ingersoll's Appeal.]

inoperative and void, does not invalidate the trust, if for other reasons it ought to be supported.

February 4th 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Appeal from the Court of Common Pleas, No. 2, of *Philadelphia county:* Of January Term 1876, No. 122.

The bill in this case was filed by A. D. Campbell and wife, on behalf of the latter, against Charles Ingersoll and John M. Thomas, trustees under the will of Elizabeth Wilcocks.    The bill avers that Elizabeth Wilcocks made her will on February 5th 1848, and subsequently two codicils thereto, the last of which was dated in 1862; that in 1863 she died unmarried; that in her will she made the following disposition :—

"I give and bequeath and devise to Joseph R. Ingersoll and Charles Ingersoll, their heirs and assigns, all the rest, residue and remainder of my estate, real and personal, which I now possess or may die possessed of, in trust for the children of my late brother Benjamin C. Wilcocks, namely, Mary Waln Wilcocks and Helen Julia Wilcocks, for them, their heirs, executors, administrators and assigns; and I direct that the trustees aforesaid shall hold the same, capital and income, until their arrival severally at the age of twenty-one years, and that no part of the same shall be expended for them or for their use during their minority, unless in the opinion of my trustees it shall be necessary to lay out for them any portion of the income, in which case I leave it to their discretion to do so ; and when they arrive severally at twenty-one years of age, the income shall be paid to them quarterly, or at other convenient periods, by my trustees, so that the same may be share and share alike, for their equal and sole and separate use, and not subject to the debts or control of their husbands, in case of their marrying; and should either of them die without issue, then the share of the deceased shall go, but still subject to the trust, to the survivor, her heirs, executors, administrators and assigns; and should they, or either of them, die leaving issue, then my trustees shall hold the estate, so left, for the uses which may be declared by them or either of them by last will and testament, or writing in nature thereof; and should both of them die without issue, then I give, devise and bequeath all the estate included in this, the residuary clause of my will, to my nephew Charles Ingersoll, to him, his heirs, executors, administrators and assigns, free and clear of this trust, which in that event shall cease and determine."

That testatrix died possessed of certain personal and real estate ; that one of her nieces, Helen Julia Wilcocks, married Chandler Robbins, in 1865, and died in 1868, intestate, and without issue ; that the other niece, Mary W. Wilcocks, married Alexander D. Campbell, in 1870 ; that on December 17th 1874, said Robbins and Sarah W. Wilcocks granted and released unto Mrs. Mary W. Campbell,

her heirs and assigns, all the part, share and interest, present and expectant, of them, the said Robbins and Sarah Wilcocks, of, in and to the undivided moiety of the estate, real, personal and mixed, of the said Elizabeth Wilcocks, so given and devised to the children of Benjamin C. Wilcocks; that Joseph R. Ingersoll died February 20th 1868, and left surviving him Charles Ingersoll; that for the purpose of appointing a co-trustee, said Ingersoll granted and transferred to J. D. Rodney, all the estate devised to Joseph R. Ingersoll and Charles Ingersoll, in trust for the said Mary W. Wilcocks, in trust to convey to Charles Ingersoll and John M. Thomas, who were to hold the same upon the same trusts as the said Charles and said Joseph R. Ingersoll were to hold them; that said Rodney accordingly conveyed to said Ingersoll and Thomas; that Mrs. Campbell, at the time of the death of her aunt, Miss Wilcocks, was a minor, not contemplating marriage ; that the plaintiffs were informed that the trusts were inoperative, and have applied to the trustees to make a conveyance and transfer to Mrs. Campbell, which they decline to do without the direction of the court.

The prayers of the bill are, for an account, a transfer and conveyance of the real and personal estate.

The answers admitted the facts, except as to Mary W. Wilcocks contemplating marriage at the time of the death of the testatrix, and averred that the duties of the trust had been performed, and that defendants submitted themselves to the court for such judgment or decree as might be proper. That Mrs. Campbell did not contemplate marriage at the time of the death of her aunt was proved and is not in dispute.

The court below, Mitchell, J., held that the interest of Mrs. Campbell was a fee simple, and that the trustees should pay over to her whatever amount should be found in their hands to which she was entitled, and that they should make a conveyance in fee simple of the real estate. Subsequently a decree was made that the account filed was a correct account, and that the sum therein, to wit, $759.15, should be paid to Mrs. Campbell, and that a conveyance of the real estate should be made.

Defendants appealed and assigned for error, the entry of a decree that an account should be taken, and that the personal and real estate should be conveyed and transferred to Mrs. Campbell, discharged from the trust, and holding that the devise and bequest over to the survivor of the nieces of the testatrix, upon death without issue of one of them, were void for remoteness. In holding that the devise and bequest over to Charles Ingersoll, after the death without issue of the survivor of the nieces of the testatrix, were void for remoteness. In holding that the words in the will "die without issue," signified an indefinite failure of issue. In holding that that the trust had become executed and the property held under

it must be conveyed to the cestui que trust, and in not dismissing the bill.

This case was first argued on the 7th of February 1877, but a re-argument having been subsequently ordered, came on for hearing on the 4th of February 1878.

*A. Sidney Biddle* and *R. C. McMurtrie*, for appellants.—The whole case turns on the effect of the limitation over in the event of the death of Mrs. Campbell. If that is a remainder, it is nugatory; if an executory devise, it is valid, and if valid, the trustees must continue to hold the estate for the protection of the ultimate limitation, and to enable the powers to be exercised with regard to it. And the effect of the limitation turns on the meaning to be given to the words defining the event on which it is to take effect. Is it after an indefinite failure or a definite failure of issue? The appellants contend that a definite failure of issue was intended. It is after a gift in fee simple. The limitation to the survivor of the two original devisees is on dying without issue. That this meant issue then living is proved by the provision for the event of their being issue.

The issue which is to permit the limitation over to the surviving sister is the same class of persons as that which is to permit the limitation to Mr. Ingersoll. Both or neither include an indefinite class. Both or neither import persons living at the death of the first taker. In the case of the sisters taking by survivorship, the trust is to continue with power to sell. invest, &c. Certainly not for ever and as long as the fee simple lasts. If, however, the words mean an indefinite failure, this power cannot be exercised and the trust was at an end. The trust is, by express terms, to last until it is ascertained that, by reason of there being issue on the death of Mrs. Campbell, the limitation cannot take effect in Mr. Ingersoll. It is certain that the testatrix intended it to last till then. She directs a conveyance then, clear of the trusts.

Was the word "issue" used in such a sense as to make the limitations possible, or must it be read in such a sense as to make them all nugatory, and turn the whole will into a simple devise in fee simple to the two infant nieces?

The existence of a power to sell and invest, and the blending of real and personal estate (both of which occur here) are relied on at great length in Sheets's Appeal, 2 P. F. Smith 257, as evidence of an intention to reduce the absolute estate to one for life. It is not contended that this is the case here. All that we contend for is, that there being a provision which can take effect as an executory devise, but not as a remainder, there is no reason for construing it to be a remainder for the purpose of destroying it.

The power to appoint to issue, if any, indicates still that issue then living was intended: Hawkins on Wills 213; Myers's Appeal,

[Ingersoll's Appeal.]

13 Wright 111; Still *v.* Spear, 3 Grant 307; Hagerty *v.* Alright, 2 P. F. Smith 274; Bedford's Appeal, 4 Wright 22; Doe *v.* Frost, 3 B. & Ald. 546; Keen's Appeal, 14 P. F. Smith 268.

As to personalty the testatrix evidently had in mind the time of the death of the first taker, for she declares that then the bequest shall fall back to the survivors; and she names the survivors. They were therefore distinctly in her mind's eye, and not persons unborn or unknown.

A limitation over by will to survivors or persons in being, after the death of the first taker without issue, raises a strong presumption that a testator did not contemplate an indefinite failure of issue : Deihl *v.* King, 6 S. & R. 32; Eichelberger *v.* Barnetz, 17 Id. 295; Johnson *v.* Currin, 10 Barr 498; Moffat *v.* Strong, 10 Johns. 16; Ranelagh *v.* Ranelagh, 2 Myl. & K. 441; Massey *v.* Hudson, 2 Meriv. 133; Turner *v.* Frampton, 2 Coll. 331; Westwood *v.* Southey, 2 Sim. N. S. 192; Hawkins on Wills, 1 Am. ed., p. 209; Fairchild *v.* Crane, 2 Beas. 108; Threadgill *v.* Ingram, 1 Ired. 1577; Carson *v.* Kennerly, 8 Rich. Eq. 259; Williams *v.* Graves, 17 Ala. 62; Birney *v.* Richardson, 5 Dana 427; Booker *v.* Booker, 5 Humph. 505; Moody *v.* Walker, 3 Ark. 148; Mifflin *v.* Neal, 6 S. & R. 460; Rapp *v.* Rapp, 6 Barr 45.

*S. S. Hollingsworth*, for appellees.—The first intention of the testatrix was to give to each of her nieces an estate in fee simple. She gives the residue of her estate to trustees in trust for them, their heirs, executors, administrators and assigns. She then makes a trust for accumulation during their minority, and for their separate use, if they marry. The gift over, on the death of either niece without issue, of her share to the survivor in fee simple, and if both die without issue, to Mr. Ingersoll, " to him, his heirs, executors, administrators and assigns," is plainly intended to reduce the estate given the nieces to a fee-tail, with cross-remainders in tail between them and an ultimate remainder in fee to Mr. Ingersoll, if both nieces die without issue. 'Issue' is a word of very extensive import. The term embraces descendants of every degree, whensoever existent, and, unless restricted by the context, cannot be satisfied by being applied to descendants at a given period. The only mode by which a devise to the issue can be made to run through the whole line of objects comprehended in the term is by construing it as a word of limitation, synonymous with heirs of the body, by which means the ancestor takes an estate tail : 2 Jarman on Wills 329; Angle *v.* Brosius, 7 Wright 187. Words referring to the death of a person without issue, unexplained by the context, and referring to either personalty or realty, import an indefinite failure of issue : 2 Jarman on Wills 418; Caskey *v.* Brewer, 17 S. & R. 441; Lapsley *v.* Lapsley, 9 Barr 130; Smith's

Appeal, 11 Harris 9; Hansell v. Hubbell, 12 Id. 244; Potts's
Appeal, 6 Casey 168; Rancel v. Cresswell, Id. 158; Matlack v.
Roberts, 4 P. F. Smith 148; Mengel's Appeal, 11 Id. 248.  The
word "then" has been used to introduce the limitation over in the
event of the first taker dying without issue: Clark v. Baker, 3
S. & R. 470; Caskey v. Brewer, supra; Paxson v. Lefferts, 3
Rawle 59; Heffner v. Knepper, 6 Watts 18; Eichelberger v.
Barnitz, 9 Id. 447; Sharp v. Thompson, 1 Whart. 139; Rancel
v. Cresswell, supra; Haldeman v. Haldeman, 4 Wright 29;
Matlack v. Roberts, supra; Ogden's Appeal, 20 P. F. Smith
501; Mast & Morris's Appeal, 2 W. N. C. 404.  Yet in all these
cases the words "dying without issue" were held to import an
indefinite failure of issue.  There being, therefore, a limitation
over after an indefinite failure, it is void, and there is no ground
for sustaining a trust which was not made while the first cestui
que trust was contemplating matrimony.

Mr. Justice SHARSWOOD delivered the opinion of the court, May
6th 1878.

Several important and interesting questions have been raised on
this record, which we do not consider it necessary to discuss and
decide, as we are of opinion that it appears upon the will of Eliza-
beth Wilcocks that by the words, "die without issue," she meant a
failure of issue at a definite period, to wit, the death of both her
nieces.  Nothing certainly is better settled than that the intention
of a testator, if not contrary to law, shall be carried out in the dis-
position he may make of his property after death.  There are
many things which he cannot do, however clearly he may intend
it.  He cannot create a fee and clog the power of alienation or
relieve it from liability for debts.  He cannot create a perpetuity
by an executory devise after an indefinite failure of issue or at any
other future period, which may not be until after a life or lives in
being and twenty-one years.  But he may give an estate in fee,
subject, on certain contingencies, to be reduced to an estate for life
with a remainder over, but if those contingencies do not happen,
the first gift in fee to stand.  It is but an alternative limitation,
and such limitations have been long recognised as valid: Fearne
on Cont. Rem. 373; Luddington v. Kime, 1 Ld. Raym. 203.
This is precisely, we think, what the testatrix meant in this case,
and there was nothing unlawful in it.  She meant to give her two
nieces a fee-simple, but subject to the contingency that if they
should both die without issue living at the death of the survivor,
then over to her nephew, Charles Ingersoll, in fee.  It is undoubt-
edly true that if she had merely provided that on their death,
"without issue or without leaving issue," the devise over should
take effect, the law would have construed it to be an indefinite fail-
ure of issue, and their estate would thereby have been reduced to

[Ingersoll's Appeal.]

an estate-tail.   But the words " dying without issue or without leaving issue" may always be shown by other parts of the will to have meant " issue living" at the death of the first taker.   In Eichelberger *v.* Barnitz, 9 Watts 450, the leading case which recognised the general rule in Pennsylvania, the exceptions are acknowledged by Mr. Justice SERGEANT, in the opinion of the court, and among them is enumerated : " When the time at which the devise over is to take effect is expressly or impliedly limited to a particular period, within a life or lives in being and twenty-one years after."   See also Taylor *v.* Taylor, 13 P. F. Smith 481.   In the will before us these words are found three times in the same paragraph within a few lines of each other.   In the first two they are evidently used in the sense of a definite failure of issue : " Should either of them die without issue, then the share of the deceased shall go, but still subject to this trust, to the survivor."   " Should they or either of them die leaving issue, then my trustee shall hold the estate so left for the uses which may be declared by them or either of them by last will and testament or writing in nature thereof."   It is very evident that in both these cases the testatrix could not have contemplated an indefinite failure of issue at some future period, however remote.   When, therefore, she concludes her limitation with the same words, " should both of them die without issue," the inference is irresistible that she used the words in the same sense that she had done before.   This principle of construction was adopted and applied in Seibert *v.* Butz, 9 Watts 490, and indeed is so reasonable that it needs no citation of authority to sustain it.

Such being the state of the limitations upon the proper construction of this will, it is clear that the trust created by the testatrix was a living and active trust, important, if not absolutely necessary, to preserve the estate for the ultimate devisees.   If it was personal estate, it was important to prevent unwise investments and to relieve the first takers, subject to the contingencies, from being under the necessity of giving security ; and if it was real estate, to preserve it from waste and dilapidation.   It would seriously impair the right of disposition in the owner of property, if he could not, by the appointment of trustees in whom he had confidence, make provision against such consequences.   The fact that the testatrix intended also as one of the objects of the trust to create sole and separate estates for her nieces, then being unmarried and not in contemplation of coverture, though that object be considered inoperative and void, does not invalidate the trust, if for other reasons it ought to be supported.

> Decree reversed, and now it is ordered and decreed that the bill be dismissed with costs ; the costs of this appeal to be paid by the appellees.