## Robinson's Estate.   Robinson's Appeal.   Bowie's Appeal.

*Will—Fee simple—Devise over in case of death without issue—Estate tail—Act of April 27, 1855.*

Where a will gave the first taker a fee simple and afterwards contained a devise over in case of his death without issue: *Held*, that he took an absolute estate, as either the death without issue referred to his death in the lifetime of the testator; or to an indefinite failure of issue, in which case he took a fee tail which the act of April 27, 1855, enlarged to a fee simple.

*Life estate—Estate tail—Fee simple—Trust.*

A testator directed his executors to pay one of his daughters the interest arising from two-fifths of his estate during her natural life, and that at her death the principal should be equally divided between her " children, share and share alike; " but if she died " without leaving issue, then the said interest hereby devised to her shall revert to my estate." By the same will he gave three-fifths of his estate to his son. He further provided that if either of his said children " should die without issue, then their share . . . . shall revert to my estate, and the surviving child shall take the share of the deceased one, the interest or right in or to such share, shall be the same as the three-fifths and two-fifths heretofore devised, if to my son, then absolutely; if to my daughter, . . . . then the interest for life, the principal to her children,"' but that in no event should any of it go to another daughter named. *Held,* that the daughter took an estate tail in the two-fifths of the estate, which became a fee simple under the act of assembly; and that she was entitled to the two-fifths free of any trust.

Argued May 11, 1892.   Appeals, Nos. 406, and 467, Jan. T., 1892, No. 406, by William L. Robinson, and No. 467, by Mary E. Bowie, from decree of O. C. Fayette Co., Dec. Court, 1890, No. 40, dismissing exceptions to and confirming auditor's report distributing funds of estate of Eleazer Robinson, deceased. Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and HEYDRICK, JJ.

Eleazer Robinson died March 29, 1889, leaving the following will:

" I, Eleazer Robinson, of the borough of Uniontown, in the county of Fayette, and state of Pennsylvania, Yeoman, being of sound mind, memory and understanding, do make and publish this, my last will and testament, hereby revoking and making void all former wills by me at any time heretofore made.

" I hereby authorize and direct my executors hereinafter named to invest in some good stocks, or in real estate securities, out of my personal assets or property, the sum of five thousand dollars, the interest of said five thousand dollars, I direct to be paid to my daughter, Emma Robinson, semi-annually, to commence from the day of my death, and said interest to be paid to her as aforesaid during her natural life, and at her death, the principal to go to my residuary estate or legatees. The interest aforesaid to be my said daughter, Emma Robinson's full share out of my property, real, mixed or personal, of which I shall die seized or possessed of, as and for her full share of my estate.

" I give and bequeath unto my wife, Elizabeth Robinson, during her natural life, the rest and residue of my property, real, personal and mixed, of every kind and description, and wherever situated, whether the same consists in houses, lands, money, bonds, judgments, notes or any other species of property, real personal or mixed, she to have the use of such of my real and personal property as she may desire or need for the use of herself or family, the residue to be rented if of realty ; and that which consists of personalty that she may not want, to be sold, and the proceeds arising from which with all such monies, notes, bonds, judgments, or other evidences of indebtedness belonging to me, shall be put or kept at interest, and the interest arising therefrom shall be paid to my said wife, Elizabeth, as the same becomes due, during her natural life, out of which said interest so to be paid to my said wife. I expect her to educate and maintain our children, William L. and Mary E. Robinson, and I hereby appoint my said wife, guardian of our said children during their minority.　The bequests to my said wife are given to her in lieu of dower or her share under the law.

" After the death of my said wife, I direct my executors hereinafter named, to have an appraisement made of my whole estate, and I give, devise and bequeath unto my son, William L., upon his arriving at the age of twenty-one years, the three-fifths of my estate, and to my daughter, Mary E., I direct my executors to pay her the interest arising from the two-fifths of my estate during her natural life, and at her death the principal, being the two-fifths of my estate, is to be equally divided between her children, share and share alike, but if my said daughter, Mary E., should die without leaving issue, then the said interest hereby devised to her, shall revert to my estate. If my said son William L., should arrive at the age of twenty-one years, before the death of his said mother, my executors are directed to pay him such of his interest in my estate as his said mother may direct.

" I hereby direct and impower my executors, if they should deem it advisable, to sell and execute deeds for any of my real estate, during the life of my said wife, except our homestead ; and a pasture lot near town, containing about seven acres, and after her death or at her request, they are hereby authorized to sell any and all my real estate and to make and execute deeds for the same, and give acquittances therefor.

" If either of my said children should die without issue, then their share of my estate shall revert to my estate, and the surviving child shall take the share of the deceased one, the interest or right in or to such share, shall be the same as the three-fifths and two-fifths heretofore devised, if to my son, then absolutely; if to my daughter, Mary E., then the interest for life, the principal to her children, but in no event is any of it to go to my daughter Emma. And I do hereby constitute and appoint my beloved wife, Elizabeth, my esteemed friend John Wilson and my stepson, George Porter, executrix and executors of this my will and testament. In testimony whereof, I have hereunto set my hand and seal this 16th day of September, A. D., 1867."

The testator added the following codicils :

" Codicil to the foregoing will, made this 11th day of May, 1870. I give to my daughter, Emma Robinson, the interest arising from the sum of eight thousand five hundred dollars, as hereinbefore mentioned, the same to be paid as within directed as to time and manner and the principal at her death to go into my residuary estate or to my legatees and said interest to said Emma is to be in full of her share of my estate, real, personal or mixed."

" I, Eleazer Robinson, add this second codicil to this, my last will. First, I hereby revoke the aforesaid bequest made to my daughter, Emma Robinson, as I have made her a deed for a house and lot, situated in the borough of Uniontown, and have given her in money the sum of five thousand dollars. And further, I revoke the appointment of George Porter as one of my executors, and hereby appoint my son, Wm. L. Robinson, one of my executors. In witness whereof, I-have hereunto set my hand and seal this 3d day of May, 1882."

The executor, William L. Robinson, having filed an account, it was referred by agreement to M. M. Cochran as auditor " to take testimony, pass upon exceptions to the account of the executor, and report a distribution of the balance in the hands of said executor to and among the parties entitled thereto."

The report of the auditor was as follows :

" The undersigned appointed auditor to pass on exceptions filed by Mary E. Bowie to the said account of William L. Robinson, executor of Eleazer Robinson deceased, and to report a

distribution of the balance in the hands of the said executor to, and among the parties entitled to receive the same, does respectfully report: That in pursuance to notice accepted by the attorneys of parties interested, he met the said parties on the 13th day of April, 1891, R. F. Hopwood, Esq., appearing for William L. Robinson both as executor and legatee, and S. L. Mestrezat, Esq., appearing for Mary E. Bowie, legatee; whereupon the said executor by his attorney offered in evidence the will of deceased, dated September 16, 1867, probated April 11, 1889, also the account of said executor, at No. 40, December court, 1890, showing a balance in his hands of the corpus of the estate of $56,474.05, the revenues from the estate having been distributed by accountant himself in his said account. The auditor was directed by agreement of counsel herewith filed to treat all the exceptions as withdrawn except the fifth and last exception, and which is to the effect that 'the accountant should have paid to exceptant the principal of two-fifths of decedent's estate, less debts, expenses of administration and legacy to Mrs. King.' This exception involves the construction of the last will and testament of Eleazer Robinson, and preparatory to this investigation the parties agree upon and admit the following facts, to wit: That Elizabeth Robinson, the wife of Eleazer, died during the lifetime of her said husband, and the testator himself afterwards died on the 29th day of March, 1889, leaving to survive him three children mentioned in his will, viz.: Emma, intermarried with Cortland King, William L. Robinson, and Mary E., intermarried with Dr. A. P. Bowie. That William L. and Mary E., while of tender age at the time of the execution of said will, were of lawful age, and both married at the time of testator's decease. With these facts before us, we proceed to examine said will. The testator in his said will, after making a bequest to his daughter Emma (who has been paid) and giving the balance of his estate to his wife, Elizabeth, during her natural life, provides as follows: ' After the death of my said wife, I direct my executors hereinafter named to have an appraisement made of my whole estate, and I give, devise and bequeath unto my son William L., upon his arriving at the age of twenty-one years, the three-fifths of my estate, and to my daughter, Mary E., I direct my executors to pay her the interest arising from the two-fifths of my estate during

her natural life, and at her death the principal, being the two-fifths of my estate, is to be equally divided between her children share and share alike, but if my said daughter, Mary E., should die without issue, then the said interest hereby devised to her shall revert to my estate.'

"In the last paragraph of the will he provides further that, 'If either of my said children should die without issue, then their share of my estate shall revert to my estate, and the surviving child shall take the share of the deceased one, the interest or right in, or to such share shall be the same as the three-fifths and two-fifths heretofore devised; if to my son, then absolutely; if to my said daughter, Mary E., then the interest for life, then the principal to her children, but in no event is any of it to go to my daughter, Emma.' The testator having disposed of his personal property along with his real estate without distinction, the whole will be treated agreeably to the rules concerning the disposal and distribution of real estate: Jarman on Wills, vol. 3, page 297; Mickley's Appeal, 92 Pa. 514; 141; Pa. 350.

"The testator having survived his wife, Elizabeth, we think there can be no doubt but that William L. Robinson took, upon the death of the testator, a fee simple estate in the said three-fifths of the property devised to him under the paragraph of the will first above quoted. The only question is, how was the absolute estate thus granted in the first instance affected by the latter paragraph above quoted? In a leading case on this subject, (Mickley's Appeal, 92 Pa. 514,) Justice SHARSWOOD says: 'If a bequest be made to a person absolute in the first instance, and it is provided that in the event of death, or death without issue, another legatee or legatees shall be substituted to the share or legacy thus given, it shall be construed to mean death, or death without issue, before the testator. The first taker is always the first object of the testator's bounty, and his absolute estate is not to be cut down to an estate for life, or what is practically the same thing, to be subjected to an executory gift over upon the occurrence of the contingency of death or death without issue, at any future period within the rule against perpetuities without clear evidence of such an intent:' See also Caldwell v. Skilton, 13 Pa. 152; Stevenson v. Fox, 125 Pa. 568; McCormick v. McElligott, 127 Pa., 230; King v. Frick, 135 Pa., 575.

" The evidence of the testator's intention, as gathered from the whole will, tends greatly towards giving William L. a fee simple estate rather than otherwise. For instance, he provides for the payment to William L., upon his arrival at the age of twenty-one years, before the death of his mother, ' such of his interest in my estate as his said mother may direct,' and the paragraph last before quoted provides that should William L. acquire any property by way of remainder, upon the death of his sister, Mary E., that it should go to him ' absolutely.' Thus the testator clearly contemplates the giving of at least parts of his estate to William L. absolutely. We are of the opinion that the testator's words, ' die without issue,' in the case of William L., relate to and provide only for the case of his death during the lifetime of the testator, the contemplated life tenant, Elizabeth, having previously died; which doctrine, of course, under the facts here, gives William L. a fee simple estate. Even were it held that the words, ' die without issue,' relate to death at any time within or beyond the life of the testator, we can see no practical difference in the case of William, for in that view of the matter the effect would be to give the said property to William L. and to his ' issue;' that is, to the ' heirs of his body,' which under the rule in Shelley's case would clearly create an estate tail, which under our act of April 27, 1855, becomes a fee simple estate. Nor would the reversion to testator's estate or executory devise or remainder over to Mary E. in case of her surviving, in any way prevent William L. from thus taking a fee simple estate, as the said provisions are not at all inconsistent with a fee tail estate. In Taylor v. Taylor, 63 Pa., p. 485, Justice SHARSWOOD says : ' An estate tail may no doubt be subject to an executory devise over on some condition or event to take effect in abridgment or derogation of it, though such an executory devise can be destroyed by a common recovery suffered by the tenant in tail, which enlarges his estate into a fee and excludes all subsequent limitation, whether in remainder or by the way of springing use or executory devise.' From either standpoint, therefore, it will be seen that William L. Robinson took a fee simple estate in the property devised to him by his father, and that his share of the funds in the hands of the executor should be distributed to him.

"We next proceed to ascèrtain the character of the estate acquired by Mary E. Bowie. In paragraph of will first above quoted, testator says: 'And to my daughter, Mary E., I direct my executors to pay her the interest arising from the two-fifths of my estate during her natural life, and at her death the principal, being two-fifths of my estate, is to be equally divided between her children share and share alike.' There can be no doubt, we think, of the fact that at least a life estate is therein devised to said Mary E., by implication, even if nothing further was said in the will on this point. 'A devise of the rents, issues and profits of land is a devise of the land for so long as the rents, etc., are given:' France's Estate, 75 Pa., 220; Jarman, vol. 2, 112; 63 Pa. 170. The testator evidently believing that he had substantially devised the said two-fifths of his estate to Mary E. at least for life, continues: 'but if my daughter, Mary E., should die without leaving issue, then the said interest hereby devised to her shall revert to my estate.' Thus using the word interest in the last instance to cover much more than the mere income. The serious question here is not whether something less than a life, or freehold estate, but whether something greater than a life estate was not thus devised. A life estate does not necessarily preclude the existence of an estate tail, as the latter includes the former, and only is it necessary to use apt words of limitation in connection with the former to raise it to the importance of an estate tail. The facts and provisions in this case are so similar to the case of Haldeman v. Haldeman, 40 Pa., 29, that the auditor relies greatly upon the opinion of the court in that case, and takes the privilege of quoting pretty freely from it. Our testator here, as in that case, provides that in the event of the death of the said Mary E., the said two-fifths of his estate to go to her 'children, share and share alike.' There was no devise over, here, in case Mary left children, but the latter were to take absolutely. Had the testator stopped here, there would have been no doubt but that the word 'children' would be properly construed a word of purchase according to its ordinary legal signification, and a life estate thereby only granted to Mary, with the remainder to her 'children' living at the time of her death, if she left any such, if not then to lapse. In such a case should Mary leave no 'children,' but

grandchildren, the devise must fail, as the latter would not fill the requirement of the word 'children' used in its ordinary or restricted sense as before indicated, and thus we think the real intention of the testator as gathered from the whole will would be frustrated: Haldeman case; also Castner's Appeal, 88 Pa. 491. We have, however, additional light from the will itself as to the sense in which he used the word 'children,' viz.: 'But if my said daughter, Mary E., should die without issue, then the said interest hereby devised to her shall revert to my estate.' Under this clause the said interest would not revert should Mary 'leave issue.' Does the word 'issue' here mean such issue, that is, 'children,' or does the word 'children' mean 'issue,' that is, 'heirs of the body?' The latter sense enlarges the class of persons who should take at the death of Mary to include her descendants, and thereby we think more fully expresses what the testator had in his mind. Justice STRONG, in the Haldeman case, said: 'Whenever, therefore, in the devise of a remainder to the child or children of the first taker, it is thus made clearly to appear that those words are used in the sense of "issue" or "heirs of the body," they are to be treated as describing lineal succession to an entail. Cases are numerous of devises to one for life or for life only, with remainder to his "son" or "first son," or "eldest son," in the singular number, (all properly words of purchase,) with a devise over in default of issue of the first taker, in which he has been held to take an estate tail, in order to let in other sons, who, without such a construction would have been excluded. The estate tail has been implied from the devise over, and the word "son" or "eldest son," has been elevated into a generic term, embracing the whole line of male lineal succession, and therefore a word of limitation.' 'For similar reasons limitations of a remainder to an unborn child or son of the first taker have been held evincive of an intention to use the word "son" or "child" in the sense of "heir of the body."' The principles thus set forth are easily applicable to this case, and we may say here, as was said in that case, that our testator employed the words 'children' and 'issue' indiscriminately, and both of them as meaning an entire line of lineal descent. 'The intent that the devise should not lapse while issue of the daughter remains, is evident.' In Carroll v. Burns, 108 Pa., 386, it was said that 'the rule is un-

questioned that prima facie the word "issue" means "heirs of
the body," and will be construed as a word of limitation, unless
there be explanatory words showing it was used in a restricted
sense." In Stone v. McMullen, 10 W. N. C., 541, it was
held that 'the words "die without legitimate issue," must have
their legal effect to create an estate tail in the absence of an
unequivocal intent on the part of the testator, that they shall
not be construed in their technical sense :' See also Reinoehl
v. Shirk, 119 Pa., 108. That the word 'issue' by our tes-
tator was not used accidentally, or without intending to em-
ploy it with all that it means, it will be seen that still further
anxious to limit the respective interest to William and Mary
and their respective line of descendants or issue, if they should
have such, he again, with much deliberation, makes it the lead-
ing part of a new paragraph, wherein he provides as follows:
'If either of my said children should die without issue, then
their share of my estate shall revert to my estate.' Thus we
have the word 'issue' again employed, and as before, in a most
important place in the will. By it the testator reinforces what
he had before evidently desired to express by the word 'issue,'
that is, 'heirs of the body,' and thereby his intention becomes
more emphatic and certain, and as said in the Haldeman case,
'shows an intent to express hereditable succession.' Nor do
we think it at all sufficient to overthrow this view of the case
that the testator afterwards, in the latter part of the said para-
graph, in a matter very remote, the providing for a contingency
that has since passed, and which, in the first instance, was of
much less importance, used the word 'children,' but not, how-
ever, in relation to this above named devise of the two-fifths to
Mary. In said paragraph, immediately following that word,
'children,' which we believe he recklessly used, there is evi-
dence of a strong intent on the part of the testator that the
interest he had devised should go to the said Mary E. and Wil-
liam L. respectively, and to their descendants or issue, he says,
'but in no event is any of it to go to my daughter Emma.'
Should William die without issue before Mary, an occurrence
which the testator was bound to know might happen, and
should then Mary die leaving issue but not children, to whom
would this two-fifths go ? The testator says not to Emma, the
only other child, and shall we make him say not to Mary's is-

sue ? We think not. He plainly excludes the only other heir that could inherit in such a case, and looks no farther than to Mary and her issue; but to her and her entire line of issue he does look, from all that is contained in the will taken as a whole.

"Expressions like these, 'if he die before he has any issue,' or 'on failure of issue,' or 'for want of issue,' or 'without issue,' have been adjudged again and again to impart a general and indefinite failure of issue, and an estate tail is defined. A limitation over by way of executory devise on such failure of issue, is void as being too remote: Vaughan v. Dickes, 20 Pa., 514; Stone v. McMullen, 10 W. N. C., 541, also 119 Pa., 108; Price v. Taylor, 28 Pa., 107. In this last named case it was remarked by Justice LOWRIE as indicating the policy of the law, or rather the dispositions of courts, that 'an estate tail, that is, an estate that is to pass by lineal descent according to the laws and customs of the country, is the very form of transmission of property to which persons are naturally most favorable; and therefore we naturally incline to expect this law of descent to be provided for, when the devisor thinks of anything beyond the laws of descent of a fee simple.'

"For the reason above set forth we think, in construing this will as a whole, that the said Mary E. Bowie thereby takes an estate tail in the said two-fifths of the said testator's estate, and which becomes a fee simple estate therein, under our act of assembly of April 27, 1855, and we do further find that·the said Mary E. is entitled to receive her said share, or two-fifths, regardless of any suggested trust in the will, as such trust becomes useless in a fee simple, where it might be of value in an estate tail or for life; it would be a restraint placed upon alienation inimical to the fee simple, and therefore void. Reifsnyder v. Hunter, 19 Pa., 41; Walker v. Vincent, 19 Pa., 369. The two-fifths of the balance in hands of·the executor should therefore be paid by him to Mary E. Bowie, legatee under the will."

Exceptions to the auditor's finding that Mary E. Bowie was entitled to two-fifths of the estate, were filed by William L. Robinson.

Mary E. Bowie filed exceptions to the auditor's finding that William L. Robinson was entitled to three-fifths of the fund absolutely without an executory devise over to her in case he should die during her life, leaving no issue to survive him.

The exceptions were all dismissed and the report confirmed by the court below in an opinion by INGHRAM, P. J., as follows:

"Eleazer Robinson, the testator, died on the 29th day of March, 1889, after having made his last will, which was duly proved, and letters testamentary granted to William L. Robinson, the executor therein named.

"By his will the testator provides as follows:

"'After the death of my said wife, I direct my executors hereinafter named, to have an appraisement made of my whole estate, and I give, devise and bequeath unto my son, William L., upon his arrival at the age of twenty-one years, the three-fifths of my estate, and to my daughter, Mary E., I direct my executors to pay her the interest arising from the two-fifths of my estate during her natural life, and at her death the principal, being the two-fifths of my estate, is to be equally divided between her children, share and share alike; but if my said daughter, Mary E., should die without leaving issue, then the said interest hereby devised to her shall revert to my estate.'

"The testator further provides:—'If either of my said children should die without issue, then their share of my estate shall revert to my estate, and the surviving child shall take the share of the deceased one, the interest or right in or to such share shall be the same as the three-fifths and two-fifths heretofore devised, if to my son, then absolutely; if to my daughter, Mary E., then the interest for life, the principal to her children.'

"The auditor has found that under this will William L. Robinson took an estate in fee simple, and in so finding we think he is abundantly sustained by the authorities. We need only refer to Mickley's Appeal, 92 Pa. 514, where it was held that if a bequest be made to a person absolute in the first instance, and it is provided that in the event of death, or death without issue, another legatee or legatees shall be substituted to the share or legacy there given, it shall be construed to mean death or death without issue, before the testator.

"The first taker is always the first object of the testator's bounty, and his absolute estate is not to be cut down to an estate for life without clear evidence of such intent. There can be no doubt that the finding of the auditor as to the share or interest of William L. Robinson is correct: Stevenson v. Fox, 125 Pa. 568.

" The auditor has also found that under this will Mary E. Bowie takes an estate tail in the two-fifths of testator's estate, which becomes a fee simple estate therein under our act of assembly of April 27, 1855, and in so finding we think he is sustained by the authorites.

"'Where the intendment of a will is doubtful, the law leans in favor of an absolute estate ; of the primary, rather than the secondary intent; of the first taker as the primary object of the testator's bounty; and of a distribution conformable to the general rules of inheritance :' Fitzwater's Appeal, 94 Pa. 141.

" The testator evidently believed that he had devised the two-fifths of his estate to his daughter, Mary E., at least for life, for in the same connection he provides : 'If my daughter, Mary E., should die without issue, then the said interest hereby devised to her shall revert to my estate.' By the word interest, he certainly did not mean the income of the two-fifths, for that was to be paid to the said Mary E. during her life. We think the testator used the word interest in this connection as meaning much more than income, otherwise the two-fifths itself would be undisposed of.

" An estate for life with remainder to the issue of the first devisee, is an estate tail in law : Smith on Executory Interests, section 537.

" We agree with the auditor that the testator seems to have used the words child, children and issue meaning the same thing, and that he used them all as meaning heirs of the body and not as descriptive merely of individuals. For if by the word issue he meant child or children, instead of those words meaning issue in the sense of heirs of the body, the devise would lapse on the death of Mary E., without leaving a child, although she should leave a granddaughter. This was certainly not the testator's intention.

" For the reasons given and so clearly expressed by the auditor, and in which he is fully sustained by the authorities he cites, we agree with him in his finding that under the will of her deceased father, Eleazer Robinson, Mary E. Bowie takes an estate tail in the two-fifths of the testator's estate, which becomes a fee simple estate therein under our act of assembly of April 27, 1855."

*Errors assigned* were: In Robinson's Appeal, (1) the confirmation of the auditor's report; (2) holding that Mary E. Bowie took a fee simple in two-fifths of the estate, and (3) not holding that she took only a life estate in the income thereof with remainder in fee to her children. In Bowie's Appeal, (1) the confirmation of the auditor's report; (2–4) dismissal of appellant's exceptions, quoting them.

*B. F. Hopwood*, for William L. Robinson.—In no part of the will is Mary E. Bowie given the use or control of any part of the corpus of the estate; the principal is to be invested by the executors and only the interest paid to her: Harbster's Estate, 133 Pa. 351; Giffin's Est., 138 Pa. 327; Keim's Ap., 125 Pa. 480.

The word " children " is a word of purchase, and not of limitation: Oyster v. Knull, 137 Pa. 448; Foster v. McKenna, 11 Atl. Rep. 674. The word " issue " as used in the will, following the word " children," is used in the same sense, and should be construed as it was in Mannerback's Est., 133 Pa. 342; Shalters v. Ladd, 141 Pa. 349.

The will shows a clear intention to vest a fee simple estate in William L. Robinson. The last clause in regard to his death without issue refers to his death in the lifetime of the testator: Caldwell v. Skilton, 13 Pa. 152; Biddle's Est., 28 Pa. 59; Haldeman v. Haldeman, 40 Pa. 29; Mickley's Ap., 92 Pa. 514; Stevenson v. Fox, 125 Pa. 568.

*S. L. Mestrezat*, for Mary E. Bowie.—While " children " is a word of purchase, yet the context may show it was used in the sense of " issue:" Merrymans v. Merrymans, 5 Munf. 440; Prowitt v. Rodman, 37 N. Y. 42; Scott v. Nelson, 3 Porter, 455; Barnitz's Ap., 5 Pa. 265; Braden v. Cannon, 1 Gr. 65; Shalters v. Ladd, 141 Pa. 349.

" If she die without issue " refers to an indefinite failure of issue: Eichelberger v. Barnitz, 9 Watts, 447; Hackney v. Tracy, 137 Pa. 53.

Mrs. Bowie took an estate tail, which by the act of April 27, 1855, was converted into a fee simple.

Under the will there was an executory devise to Mrs. Bowie

of William L. Robinson's three-fifths upon his death without
children to survive him: Neave v. Jenkins, 2 Yeates, 414;
Langley v. Heald, 7 W. & S. 96 ; Eby v. Eby, 5 Pa. 461 ; Rapp
v. Rapp, 6 Pa. 45 ; Nicholson v. Bettle, 57 Pa. 385.

PER CURIAM, May 23, 1892:

These are appeals from the same decree. The questions in-
volved have been so fully considered by the learned judge
below and the auditor, that their discussion here is unnecessary.

The, decree is affirmed, and the appeals dismissed, at the
costs of the respective appellants.