## David's Estate (No. 1).

The facts appear from the following extract from the adjudication of

HENDERSON, J., Auditing Judge.—Upon examination of the account as filed, I found it contains the two funds, both held for the daughter of the decedent, under item eighth of the will, and under the residuary clause. At my direction the accounts have been separated and I will file an adjudication upon each. The original account will be attached to this adjudication.

William M. David, the testator, died November 16, 1884, leaving a will duly probated November 20, 1884.

Elizabeth Wandell Smith, daughter of the testator, died December 2, 1930, without issue.

Under item eighth of the will, ground rents of the principal sum of $75,000 were set aside and constituted this fund originally.

Item eighth provides as follows:

"I give and bequeath to my Executors the sum of Seventy-five Thousand Dollars ($75,000) in trust to invest the same and pay the net income as received unto my daughter, Lizzie Wandell David, for her sole and separate use during her life; and from and after her death to pay the principal to any children she may leave and if she should die without leaving children then the said sum shall fall into the residue of my Estate. Any irredeemable ground rents belonging to my Estate shall form part of the investment provided for in this section of my Will the said rents to be taken at twenty per cent. premium; and I desire that the balance of this sum shall be invested in Ground Rents."

The executors of the daughter, who became Elizabeth Wandell Smith, claim this fund upon the theory that the trust is dry, and as she left no children the next clause—"if she should die without leaving children"—creates an estate tail, calling for the application of the rule in Shelley's Case, and which became a fee simple under the Act of April 27, 1855, P. L. 368.

It should be observed that the testator died in 1884. It is admitted that the daughter was not in contemplation of marriage at the time of her father's death, and hence the provision for her sole and separate use would fall.

Before it becomes necessary to construe the clause—"if she should die without leaving children"—we must first inquire if the trust is dry, or, as it has been called, a mere conduit pipe, and hence should be executed. If the language otherwise constitutes a valid and subsisting trust, then it follows that the life estate and remainder are of different qualities and no merger will take place. The direction is "to invest the same and pay the net income as received unto my daughter."

In Hemphill's Estate, 180 Pa. 95, 96, the opinion of the late Judge Ashman, affirmed by the Supreme Court, is directly in point. He said, *inter alia:*

"An analysis of the cases in Pennsylvania, which have settled the distinction between active and dry trusts, will show that, in the former class, the duty to be performed by the trustee must not only involve some positive action on his part, but an action attended with some discretion. The automatic function of merely receiving for the cestui que trust and immediately paying over to him the trust fund or its income will not make a trust active. The cestui que trust could perform the act as well, and he has no protection in the superior judgment of the trustee, because the trustee is not empowered to exercise his judgment. The cases properly describe him as a mere conduit. But when the trustee is invested with a discretion however slight, he takes the place of the donor, and the trust committed to him is active. A trust for the protection of the beneficiary, who may be a spendthrift, or a married woman, or a party in remainder, stands, of course, on a different footing, and is equally valid, whether the duties of the trustee are active or passive. That this testator intended to create a trust in his real estate is clear, because he said that much when he devised it 'in trust.' That he intended the trust to be active is equally clear, because he directed the trustee to pay over the 'net income.' But the net income of real estate is only that portion which remains after the payment of taxes, repairs, and commissions, and a large measure of discretion is incident to the payment of at least one of these charges. If the trustee should pay over the gross income to the cestui que trust, he would be liable for mismanagement.

"The trust is a continuing trust for another reason. The estate in the children was an equitable estate for life, and the estate in remainder to their heirs was a legal estate. The two estates being of different qualities could not coalesce, and the rule in Shelley's Case did not therefore apply, and the trust was essential in order to protect the remaindermen: Little *v.* Wilcox, 119 Pa. 439."

Little need be added to this illuminating opinion. The executor of Mrs. Smith relies upon Robinson's Estate, 149 Pa. 418. The trust therein erected is dry; the language is "to my daughter, Mary E., I direct my executors to pay her the interest arising from the two-fifths of my estate during her natural life," and then follows language creating an estate tail. A direction to pay income does not involve the exercise of a discretion or judgment, and, hence, that trust is dry; whereas in the instant case the trustee has been charged with the discretion of investing the corpus and paying over the *net* income.

See, also, Towne's Estate, 260 Pa. 443, and Whiteley's Estate, 273 Pa. 364.

Mrs. Smith having left no children, the balance of principal and income will be added to the residuary estate and disposed of in my adjudication therein.

*Duane, Morris & Heckscher,* for exceptants; *Raymond M. Remick,* contra. *Daniel R. Rothermel,* for accountant.

PER CURIAM, January 22, 1932.—Little, if anything, need be added to what has been 'set forth in the adjudication (which contains a statement of the undisputed facts, and the item of the will relevant to the questions before the court on exceptions), as we are of opinion that the authorities cited are directly in point and that the law has been properly applied. That testator had a clear conception of the meaning of the language used, in differentiating the share of his daughter from that of his sons, is shown when we compare item seventh with item eighth. By the former, a son, James Ogden David, is

given an annuity of $3000 and the principal $75,000 when and if he attains the age of twenty-five years, and if he die prior to that time "and leave lawful issue," such issue takes; in the latter (item eighth) the trust for the daughter as to $75,000 terminates with her death and is payable "to any children she may leave and if she should die without leaving children," then the sum falls into the residue. The rule in Shelley's Case has no place in the question of interpretation, because not only is the trust an active one, so that there is no coalescence, but the word "children" as used is a word of purchase and not of limitation.

All exceptions are dismissed and the adjudication is confirmed absolutely.