(77 N. W. Rep. 340.)

---

ORCELIA CRANDELL *et al. vs.* JOHN R. BARKER.

Opinion filed December 28, 1898.

**Wills—Construction—Domicile of Testator.**

The provisions of a will relating to personal property situate in this state must be construed according to the law of the domicile of the testator at the time of his death.

**Personal Property—Bequest—Law of Domicile.**

The will of T., a resident of Pennsylvania, contained the following: "The mortgage I hold against John R. Barker and Maria J. Barker, for four thousand two hundred and thirty-five dollars ($4,235.00), dated June 14th, A. D. 1887, which covers some certain real estate in Grand Forks county, in Dakota, I give and bequeath the use and interest thereof to my daughter Maria J. Barker for and during the term of her natural life, and then to her children, if she should die leaving any. If my said daughter Maria J. shall die childless and without issue, then in that event I direct that said mortgage shall be equally divided between my daughters Barbara Knox and Orcelia Crandell, share and share alike." *Held*, that under the laws of Pennsylvania, Maria J., who survived her father, took a life interest in the mortgage, and, upon her death without issue living at the time of her death, said mortgage became the property of Barbara Knox and Orcelia Crandell.

Appeal from District Court, Grand Forks County; *Fisk, J.*

Action by Orcelia Crandell and Barbara Knox against John R. Barker for the foreclosure of a mortgage of real estate, the ownership of which plaintiffs claim under the will of their father Charles Toles, and which said will was made, and probated in the State of Pennsylvania. The facts appear in the opinion. Plaintiffs had judgment and defendant appeals.

Affirmed.

*Bosard & Bosard,* for appellant.

*Burke Corbett* (*Cochrane & Corliss,* of counsel), for respondents.

BARTHOLOMEW, C. J. In this case we are charged with the duty of determining, as a matter of fact, what the law in the State of

Pennsylvania may be, as applicable to certain conceded facts. By stipulation, all the statutes and decisions of that commonwealth are before us. The plaintiffs brought an action to foreclose a mortgage upon certain real estate in Grand Forks county. From a decree in their favor the defendant appeals to this Court, the case being triable here de novo. The facts are as follows: In June, 1887, the defendant, John R. Barker, with his wife, Maria J. Barker, executed and delivered to Charles Toles, who was the father of Maria J. Barker, a mortgage upon the real estate in question, to secure a certain note given by said John R. Barker to said Charles Toles for the sum of $4,235. Thereafter, and in 1890, said Charles Toles, who resided in Tioga county, in said State of Pennsylvania, made his will. Said will contained, among other things, the following provision: "The mortgage I hold against John R. Barker and Maria J. Barker, for four thousand two hundred and thirty-five dollars ($4,235.00), dated June 14th, A. D. 1887, which covers some certain real estate in Grand Forks county, in Dakota, I give and bequeath the use and interest thereof to my daughter Maria J. Barker for and during the term of her natural life, and then to her children, if she should die leaving any. If my said daughter Maria J. shall die childless and without issue, then in that event I direct that said mortgage shall be equally divided between my daughters Barbara Knox and Orcelia Crandell, share and share alike." Barbara Knox and Orcelia Crandell, in said will mentioned, are the plaintiffs in this action. Prior to March 18, 1893, said Charles Toles died, and on said date his said will was duly proven and approved according to law in said Tioga county. Thereafter, and on October 26, 1895, said Maria J. Barker died childless and without issue then living, having theretofore borne several children, all of whom had died in her lifetime, and leaving her husband, John R. Barker, the defendant herein her sole heir at law. Subsequently these plaintiffs, claiming to be the owners of said mortgage under the terms of their father's will, demanded payment thereof from the defendant; and he, claiming to be the owner thereof as sole heir at law of his deceased wife, refused such payment; and this litigation is the result.

The property here in controversy, being a mortgage upon land in this state, is personal property, under Rev. Codes, § § 4699, 4700. A mortgage, in this state, conveys no estate in the land. It simply creates a lien thereon. This, then, being a gift by will of personal property, it follows that the validity and interpretation of the will must be governed by the laws of the testator's domicile. Id. § 3738; *Penfield* v. *Tower,* 1 N. D. 216, 46 N. W. Rep. 413.

It is the defendant's claim that, under the terms of the will of Charles Toles, Maria J. Barker took an absolute estate in said mortgage, under the celebrated rule in Shelly's Case,—a rule announced by Lord Coke in 1581, and which became a part of our common law, and is in force in the states of this Union, unless modified or abrogated by statutory enactments. Concededly, it

obtains in Pennsylvania. Lord Coke declared the rule in this langu-age: "When the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee or in tail, 'the heirs' are words of limitation of the estate, and not words of pur-chase." This is an arbitrary rule, that never deigns to consider the intention of the grantor. If the words of the gift or convey-ance bring the estate within the rule, it is seized and distributed under the rule, regardless of, and often in clear opposition to, to the intention of the grantor. But it is evident that in every case a preliminary question must be settled, and that is whether or not the terms of the gift or conveyance bring the estate within the oper-ation of the rule. This, we think, is the difficult, as it is the de-cisive, question in this case. In its solution we get no aid from the rule itself. That is purely a rule of property, and not of construc-tion. We are required to resolve this question as we may find the courts of Pennsylvania would resolve it, were it before them. The language is, "I give and bequeath the use and interest thereof to my daughter Maria J. Barker for and during the term of her natural life, and then to her children, should she die leaving any." If there were nothing further, there would be no doubt of the testator's meaning. The ancestor, Maria J., would indeed take a freehold estate, but there would be no remainder "to her heirs in fee or in tail." The case would fall outside the wording of the rule. The restriction of the remainder to the children of Maria J. would fix the character of the estate conveyed. In the hands of Maria J. it could not be a full estate of inheritance, because it would not, on her decease, go to her "heirs" or the "heirs of her body." It would become a full estate of inheritance only after it vested in the children, thus marking them as the source from which must spring the inher-itable blood. And so are the decisions in Pennsylvania. Guthrie's Appeal, 37 Pa. St. 9. At page 15 the Court say: "But 'children,' in law, is as certainly held to be a word of purchase as 'heirs of the body' are to be words of limitation;" and again on page 21: 'But it has been held, from Wild's Case, 6 Coke, 288, down to the present day, that when the devise of the remainder is not to 'heirs' or 'heirs of the body,' but to 'children,' they take as a new stock, and not as heirs." The point is ruled the same way, and with equal emphasis, in *Oyster* v. *Oyster*, 100 Pa. St. 538. In each of these cases, however, it is conceded that the word "children" may be used by a testator as a nomen collectivum, signifying "heirs of the body." It is stated that the words "heirs of the body" or "issue," in their legal sense, are words of limitation, and the word "children" a word of purchase; and in Guthrie's Appeal Mr. Justice Strong says: "But the cases abundantly show that the intent not to use the words in their legal sense must be unequivocal; 'that it must appear so plainly' (to use the language of Lord Alvanley) 'that no one can misunderstand it.' " Again he quotes from Lord Hardwicke, in *Buffar* v. *Bradford*, 2 Atk. 222: "* * * 'Children,' in their na-

tural import, are words of purchase, and not of limitation, unless it is to comply with the intention of the testator, when the words cannot take effect in any other way." Further he quotes from Hayes' Elementary Essay (page 35): "The rules of construction freely permit, however, the use of the words 'heirs of the body' or 'issue' in the limited sense of children, and of the word 'children' in the comprehensive sense of 'heirs of the body'; these rules, or rather the fundamental principle of legal interpretation, requiring only a clear explanation to justify a departure from the ordinary meaning, imposing on those who would translate the term the onus of producing an express warrant under the hand of the author of the gift." And Justice Strong, in speaking of this comprehensive use of the word "children," says: "But I have found no case in which it has been held to have been so used, unless the testator has also employed the words 'heirs of the body' or 'issue' as descriptive of the same objects." He also says that the word "issue" is a word of doubtful meaning, though generally a word of limitation in a will. In *Oyster* v. *Oyster*, Mr. Justice Paxton said: "Without reviewing the learning upon this subject, it is sufficient to say that the authorities are uniform that 'children' is as certainly a word of purchase as 'heirs of the body' are words of limitation. Guthrie's Appeal, 37 Pa. St. 9; *Taylor* v. *Taylor,* 63 Pa. St. 481. This is the general rule, and the exceptions which from time to time have been recognized do not impair the rule itself. There are many instances in our state where 'children' has been held to be a word of limitation, but in all of them such construction was clearly in accord with the intent of the testator as gathered from the four corners of the will, as when 'children' has been used with 'heirs of the body' or 'issue' as its synonyms."

It is this conceded permission to use the word "children" in this comprehensive sense that creates the doubt in this case. Immediately after the use of the word "children" the testator adds: "If my said daughter Maria J. shall die childless and without issue, then in that event I direct," etc. Two positions are taken by appellant, and urged upon us with exhaustive ability and research. It is said that the testator, by the language used, referred to the death of Maria J. during the lifetime of the testator, and, as it is conceded that she survived the testator, the life estate vested in her, with remainder to her issue, and that the property could vest in these plaintiffs only upon an indefinite failure of issue of Maria J. Further, it is urged that, should we hold that the testator did not refer to the death of Maria J. in his lifetime, still the language used was equivalent to "issue" generally or "heirs of her body," and imported an indefinite failure of issue. Either position would bring this case within the rule in Shelley's Case.

The first point will not require extended notice. There is a class of cases which hold that in case of a devise to A. and his heirs, and, in case of his death without issue, then over to B., the death referred to is the death of A. in the lifetime of the testator. And

the reason which is almost universally assigned, and which is perfectly clear, is this: The estate first given to A. is in fee, but if it be held that (the estate having once vested in him), at his death without issue, it vests in B., then A.'s estate is reduced to a freehold. To avoid this result the law will hold that if A. survives the testator, and the estate once vests in him, he takes a fee, in accord with the wording of the devise, but, if he die in the lifetime of the testator, then the estate, when it passes from the testator, vests at once in B., he taking by substitution. In other words, this construction obtains only when the devise to the first taker is in fee, and not when it is a freehold merely. In re Biddle's Estate, 28 Pa. St. 59; Mickley's Appeal, 92 Pa. St. 514. In this latter case the syllabus reads: "If a bequest be made to a person, absolute in the first instance, and it is provided that in the event of death, or death without issue, another legatee or legatees shall be substituted to the share or legacy there given, it shall be construed to mean death or death without issue before the testator. The first taker is always the first object of the testator's bounty, and his absolute estate is not to be cut down to an estate for life without clear evidence of such intent." See, also, Robinson's Estate, 149 Pa. St. 418, 24 Atl. Rep. 297; *Mitchell* v. *Railway Co.,* 165 Pa. St. 645, 31 Atl. Rep. 67; *Coles* v. *Ayres,* 156 Pa. St. 197, 27 Atl. Rep. 375; Fitzwater's Appeal, 94 Pa. St. 141; *Stevenson* v. *Fox,* 125 Pa. St. 568, 17 Atl. Rep. 480; *McCormick* v. *McElligott,* 127 Pa. St. 230, 17 Atl. Rep. 896; *King* v. *Frick,* 135 Pa. St. 575, 19 Atl. Rep. 951. We think that is the rule in Pennsylvania, although it has sometimes been questioned. *Lippencott* v. *Warder,* 14 Serg. & R. 115; *Jessup* v. *Smuck,* 16 Pa. St. 327. We are not concerned as to the application of this rule of construction in other jurisdictions, but see 11 Am. & Eng. Enc. Law, 919, and cases cited in note 15. But, conceding the rule in Pennsylvania to be as stated, we think it is confined to those cases where the primary devisee is given an absolute estate. All the cases cited are of that character. The reason for the rule could only apply in cases of that character, and, while we do not say that no Pennsylvania case can be found giving the construction a broaded scope, yet we do not think such a case would be now followed. See further, on this point, *Wright* v. *Charley,* 129 Ind. 257, 28 N. E. Rep. 706; *Bank* v. *De Pauw,* 75 Fed. Rep. 775; *Vanderzee* v. *Slingerland,* 103 N. Y. 47, 8 N. E. Rep. 247. We do not think this will would be construed in Pennsylvania as meaning that the death of Maria J. must occur in the lifetime of the testator.

But did the testator, by the use of the words "die childless and without issue," refer to an indefinite failure of issue, or a failure of issue at the date of the death of Maria J.? If he intended an indefinite failure of issue, then the word "issue" was equivalent to "heirs of her body," and, with the preceding life estate to Maria J., created in her an estate tail in case the devise was real estate, which by virtue of the Pennsylvania statute of April 27, 1855, was

enlarged to a fee simple. The same language would probably vest an absolute interest in the legatee in a bequest of personalty without the intervention of the statute. 3 Jarm. Wills (5th Am. Ed.) 374, and cases cited. Many Pennsylvania cases hold that the terms "in default of issue," "if he die without issue," or "if he have no issue," when uncontrolled by other terms in the will, and unexplained, mean an indefinite failure of issue. See *Eichelberger* v. *Barnitz,* 9 Watts, 447; *George* v. *Morgan,* 16 Pa. St. 95; *Wynn* v. *Story,* 38 Pa. St. 166; *Haldeman* v. *Haldeman,* 40 Pa. St. 29; *Covert* v. *Robinson,* 46 Pa. St. 274; *Allen* v. *Henderson,* 49 Pa. St. 333; *Gast* v. *Baer,* 62 Pa. St. 37; Yarnall's Appeal, 70 Pa. St. 341; *Greenawalt* v. *Greenawalt,* 71 Pa. St. 483; Ingersoll's Appeal, 86 Pa. St. 240; *Morrison* v. *Truby,* 145 Pa. St. 540, 22 Atl. Rep. 972; *Potts* v. *Kline,* 174 Pa. St. 513, 34 Atl. Rep. 191. Many of these cases also serve as illustrations of the comprehensive use of the word "children." Other cases might be cited on this latter point. *Lapsley* v. *Lapsley,* 9 Pa. St. 130; *Hackney* v. *Tracy,* 137 Pa. St. 60, 20 Atl. Rep. 560; *Williams* v. *Leech,* 28 Pa. St. (4 Casey) 89; Potts' Appeal, 30 Pa. St. (6 Casey) 168; Naglee's Appeal, 33 Pa. St. (9 Casey) 89; *McKee* v. *McKinley,* Id. 92. We should conclude that all the cases cited from Casey were overruled in Guthrie's Appeal, were it not that some of them are cited to the same point in Yarnall's Appeal. But that does not affect the principle. It simply goes to its application in a particular case. It must be borne in mind, also, that without exception the foregoing cases related to devises of real property. In one or two cases personal property was included, but none of them related exclusively to personal property. There is no doubt that these cases establish the general rule that in construing a devise of real property the words "die without issue" or "in default of issue," and similar phrases, mean an indefinite failure of issue. But the Pennsylvania Reports are full of decisions where the Court has held that the general meaning of the phrase was restricted or controlled by the context. *O'Rourke* v. *Sherwin,* 156 Pa. St. 285, 27 Atl. Rep. 43; *Shalters* v. *Ladd,* 141 Pa. St. 349, 21 Atl. Rep. 296; *Peirce* v. *Hubbard,* 152 Pa. St. 18, 25 Atl. Rep. 231; *Nes* v. *Ramsay,* 155 Pa. St. 628, 26 Atl. Rep. 770; *Anderson* v. *Anderson,* 164 Pa. St. 338, 30 Atl. Rep. 304; *Cameron* v. *Coy,* 165 Pa. St. 290, 30 Atl. Rep. 843; *Tayor* v. *Taylor,* 63 Pa. St. 481; *Smith* v. *Coyle,* 83 Pa. St. 242; *Robins* v. *Quinliven,* 79 Pa. St. 333; *Daley* v. *Koons,* 90 Pa. St. 246; In re Miller's Estate 145 Pa. St. 561, 22 Atl. Rep. 1044. These cases also relate to real estate, and they conclusively show that each particular devise is made to rest upon its own special wording, and in construing the wording the prime object is to give effect to the testator's intentions. It is only when the wording thus construed brings the devise within the rule in Shelley's Case that the special intent of the testator is disregarded, and forced to yield to what the law declares was his general intent. And it is interesting to notice upon what slight shades of difference in mean-

ing the cases have been made to turn. In Guthrie's Appeal the language was: "I give and bequeath to my daughter Elizabeth, wife of James Bones, the use and life estate, in her own proper person (but without power to convey the same to any other person for any period or term), all my messuage, tenement, and lot or tract of land whereon she now resides with her husband, in the township of Brandywine, and county of Chester, which I purchased at sheriff's sale as the property of William Christman, and containing fifty acres, be the same more or less; and, at the decease of my said daughter Elizabeth, the said lot or tract of land and appurtenances I hereby bequeath to such of her children or their heirs as may survive her, as tenants in common,—that is, the child or children of any deceased child of hers shall hold the same interest and right that the deceased parent would have held if living." Held a life estate only in Elizabeth Bones. In Haldeman's Case, 40 Pa. St. 29, decided six months later, and the opinion written by the same learned jurist, the language was: "The residue of my estate, real, personal, and mixed (being much the largest portion), devise, leave, and will to all my children, share and share alike, with this reservation in regard to my three daughters, Sarah, Mary, and Susan: I will, direct, and charge my executors, or the survivors of them, to account for any pay over half-yearly to Sarah, Mary, and Susan, and to each of them, during their natural lives, the income or profit arising out of each of their share of the residue, and, after the death of either, then to descend and go to the child, and, if children, share and share alike. Should, however, either of my daughters, Sarah, Mary, or Susan, die, and leave no lawful issue, then such share or portion is to fall back again to the residue, and form a part of the same." Held an estate tail in the daughters named, which by virtue of the statute of 1855 was enlarged to a fee. This last case is said, in Yarnall's Appeal, to be the strongest case in the state as a test of the rule interpreting "child" or "children" as meaning the entire line of descent. But we will not consume further space in camparing these cases. As early as *Seibert* v. *Butz*, 9 Watts, 490, Chief Justice Gibson said: "But the courts have seized with avidity on any circumstance, however trivial, denoting an intent to fix the contingency at the date of the death." And as late as *Cameron* v. *Coy*, 165 Pa. St. 290, 30 Atl. Rep. 843, Mr. Justice Mitchell said: "The rule which was adopted by our earlier cases from the English authorities, and perhaps may still be called the general rule, is that the words 'die without leaving issue' presumably refer to an indefinite failure of issue, but this presumption will yield to a contrary intent apparent from the whole will *Middleswarth's Adm'r* v. *Blackmore*, 74 Pa. St. 414. And this Court has frequently said with great emphasis that it is the testator's actual intent that must govern, and where that is clear all technical rules of construction must give way to it. Reck's Appeal, 78 Pa. St. 432; Woelpper's Appeal, 126 Pa. St. 562, 17 Atl. Rep. 870."

When we seek for the intention of the testator in this case, we

do not think it difficult of detection. His daughter was a married woman. She had been the mother of children. Whether such children were living at the date of the will, the record does not disclose. The gift was to the daughter "for and during the term of her natural life, and then to her children, if she should die leaving any." Leaving any when? At the date of her death, of course. The date of the death of the legatee was, in the mind of the testator, the point of time that should determine whether the property went to the children or to the sisters of the first taker. With this thought in his mind he immediately adds: "If my daughter Maria J. shall die childless and without issue, then in that event," etc. Without issue when? At a time other and different from that he had in mind, or other or different from that at which she should die childless? We cannot reasonably believe it with the two contingencies thus closely linked together. In *Siebert* v. *Butz*, supra, the contingencies were, "Should one of my daughters die without issue or will," and Chief Justice Gibson said: "The daughter's will would speak at her death, and the contingency of dying without issue was evidently so closely coupled, in the testator's apprehension, with the idea of her dying with or without one, as to have been inseparable from it; and, though there may be an indefinite dying without issue, there can be no indefinite dying without a will." That language, slightly paraphrased, would meet this case exactly. But the appellant may say that this reasoning begs the question; that his contention is that the word "children," as used by the testator, is a synonym for the word "issue"; and that the testator's intention will be subserved by substituting the latter for the former. The bequest would then be to the daughter for life, "and then to her issue if she die leaving any." Any mind unfettered by technicalities would at once say that expression meant leaving any issue at the time of the death. And such is the general holding. An examination of the authorities shows that while the terms "die without issue," "in default of issue," and equivalent phrases, import a general or indefinite failure of issue, yet the words "die leaving no issue," when speaking of personal property, are held to mean issue living at the time of the death. 2 Jarm. Wills (5th Am. Ed.) 499, and note. But where in this entire bequest do we find anything that warrants us in assuimng that the testator did not use the word "children" advisedly? It is a word of well-understood signification, and, when used in the connection in which we here find it, is just as certainly a word of purchase as the words "heirs of her body" are words of limitation. It is to be construed as a word of limitation only—as Lord Hardwicke puts it (*Buffar* v. *Bradfor*, supra)—"when the words cannot take effect in any other way." While the word "issue," as we have seen, is a word of doubtful meaning, in a will it is usually a word of limitation, but is easily controlled. In *Daniel* v. *Whartenby*, 17 Wall. 639, Mr. Justice Swayne says: "While the rule is held to apply as well to wills as to deeds, the words 'issue of his body' are more flexible than the

words 'heir of his body'; and courts more readily interpret the former as the synonym of 'children,' and a mere descriptio personarum, than the latter." And in *Powell* v. *Board,* 49 Pa. St. 46, after stating that the technical words "heirs of the body" might by the context be shown to be words of purchase, the Court say: "And it is equally certain that by the same means the word 'issue' may be shown to have been used as a word of purchase, meaning children, grand-children, etc. Being not strictly a technical word, never a word of limitation, except when used in a will, it requires even less to overcome the presumption that a limitation was intended by its use than is demanded to rebut the presumption arising from the use of the words 'heirs of the body,'" We cannot, in this bequest, permit the word of doubtful and uncertain meaning to overrule and hold for naught that which is certain. The case of *Daley* v. *Koons,* 90 Pa. St. 246, is so nearly identical with the case at bar that we may profitably quote from it. The devise there was as follows: "I give and devise to my daugher, Mary Ann Westafer, the farm on which I at present reside, situate in Newton township, containing one hundred and sixty-eight acres, more or less, for and during her natural life, and after her death to her children in fee; and in the event of my said daughter, Mary Ann, dying without issue, I then, after her death, give and devise said farm," etc. For the purposes of the question here under discussion, we can discover no difference in meaning between the language there used and that here involved. In deciding that case, Chief Justice Sherwood said: "To lay hold of the words 'dying without issue,' to convert her estate into a fee, so as to give her the power to dispose of it away from her children, if she had any, or away from her brothers and sisters and their heirs, if she had no children, would contravene and disappoint the manifest intention of the testator. Fortunately there is no adjudged case in this state or elsewhere which requires or would justify us in doing so. Mr. Jarman, in his valuable treatise on Wills, after referring to a number of authorities establishing the settled rule of construction to be that the words 'in default of such issue,' following an express devise to any particular branch of issue, as children, sons, or daughters, will be construed to refer to the issue before described, adds: 'It is well settled, also that words importing a failure of issue (without the word 'such'), following a devise to children in fee simple or fee tail, refer to the objects of that prior devise, and not to issue at large.' 2 Jarm. Wills (5th Am. Ed.) 372. The cases to which he refers fully support his position."

In the light of the authorities cited, we are clear that the laws of Pennsylvania require us to hold that the testator, in this case, when he made the bequest in question to his daughter Maria J., referred to a failure of issue at her death. But there is another ground upon which we think the decision of the lower court can rest in equal security. The authorities so far cited have treated in the main of real estate. In this case, as we have seen, the gift was personal

property. The rule in Shelley's Case has been expressly held in Pennsylvania to cover personal property. Cockin's Appeal, 111 Pa. St. 26, 2 Atl. Rep. 363. But we think the law must be regarded as settled in Pennsylvania that the words "die without issue," as applied to a bequest of personal property, always import a definite failure of issue at the death of the first taker. The rule was announced by Chief Justice Tilghman, in *Clark* v. *Baker*, 3 Serg. & R. 470, in these words: "These words, 'without leaving issue,' applied to personal estate, have been held to mean issue living at the death of the person to whom the property is given in the first instance. But not so with regard to land. This is the distinction taken in the case of *Forth* v. *Chapman*, 1P. Wms. 667, and it is well founded, because it carries into effect the intention of the testator. It would answer no purpose to understand issue indefinitely, in the case of personal property, because the issue may take accordingly." It was reaffirmed in Meyer's Appeal, 49 Pa. St. 111; Eachus' Appeal, 91 Pa. St. 105; Snyder's Appeal, 95 Pa. St. 174. In Moorhead's Estate, 180 Pa. St. 119, 36 Atl. Rep. 647, the Supreme Court approved the following language used by the trial court: "There has been much learning expended upon the meaning of the words 'dying without issue,' and whether they import a definite or indefinite failure of issue; but it now seems to be settled that, when applied to personal property, it means issue living at the death of the person to whom the personalty is given in the first instance." We have no doubt of the existence of this rule. True, it has not always been applied, but this seems to be because the attention of the Court was not always called to the rule. We find no case that denies its existence. It follows, then, that, under the laws of the State of Pennsylvania, Maria J. Baker took only a life interest in the mortgage in question, and upon her death, leaving no children or issue her then surviving, the bequest over took effect, and Barbara Knox and Orcelia Crandell, the plaintiffs herein, became the owners of said mortgage. The judgment and decree of the District Court are made the judgment and decree of this Court. Affirmed. All concur.