[File No. 6607.]

FEDERAL FARM MORTGAGE CORPORATION, a Corporation, Appellant, v. GEORGE BERZEL and Mary Berzel, His Wife; Shields Fruit Company, Inc.; Wachter Transfer Corporation; Duluth Brewing & Malting Co.; A. A. Dinsdale and Mrs. A. A. Dinsdale, His Wife; and the State of North Dakota, Respondents.

(291 N. W. 550.)

Opinion filed March 7, 1940.

*Tobias D. Casey, John Thorpe, Michael A. Schmitt* and *Robert J. Berry,* for appellant.

*Alvin C. Strutz,* Attorney General, and *A. M. Kuhfeld,* Assistant Attorney General, for respondent.

Burke, J. Plaintiff brought this action to foreclose a real estate mortgage executed and delivered to it by the defendants, George and Mary Berzel. The mortgage was executed on May 1st, 1934, and filed for record in the office of the Register of Deeds of Stark county on May 16, 1934. The state of North Dakota was named as a party defendant in the action and it was alleged in the complaint that the state was the owner and holder of a judgment lien upon the mortgaged premises, which lien was inferior to that of plaintiff's mortgage. The prayer for relief was the usual demand of foreclosure. The defendant state answered, alleging: that it was the owner of two unpaid judgments entered and docketed in its favor and against the defendant George Berzel on December 11, 1937, and March 26, 1938, respectively; that the actions in which said judgments were entered were brought pursuant to the provisions of § 8 of chapter 162, Laws of North Dakota 1919, as amended by chapter 315, Laws of North Dakota 1931, to collect premiums for Workmen's Compensation Insurance due from the defendant Berzel to the North Dakota Workmen's Compensation Bureau and the North Dakota Workmen's Compensation Fund and that, by virtue of the provisions of said statute, the lien of said judgments is superior to that of plaintiff's mortgage. To this answer, plaintiff interposed a general demurrer which was overruled by the trial court. The appeal is from the order overruling the demurrer.

The question for decision is: Do the provisions of § 8 of chapter 162, Laws of North Dakota 1919, as amended by chapter 315, Laws of North Dakota 1931, operate to clothe the liens of the state's judgments with superiority over the lien of plaintiff's mortgage, although such judgment liens are subsequent in point of time? The statutory provision in question is found in chapter 315, supra, and reads as follows: "Any judgment obtained in any action under this act shall be a prior lien over all other judgments and liens, except those in existence prior to the original enactment of this provision, and cases arising under this section shall have precedence over all other civil cases."

Plaintiff contends that, by the applicable rules of statutory construction, the words "all other judgments and liens," as used in the statutory provision above quoted, do not include mortgages and (2) that if the words "all other judgments and liens" be construed to include mortgages, such construction would render the statute violative of §§ 13 and 16 of the Constitution of North Dakota, § 10 of Article 1 of the Constitution of the United States and § 1 of Article 14 of Amendments to the Constitution of the United States in that, under such construction the statute would (a) impair the obligations of plaintiff's mortgage, (b) deny to the plaintiff the equal protection of the laws and (c) deprive the plaintiff of its liberty and property without due process of law.

The question of construction turns upon the meaning that is to be accorded to the word "liens" in the phrase "all other judgments and liens." Plaintiff asserts that legislative practice in this state in the establishment of statutory superiority of specific liens has always been to manifest a legislative intent to include mortgages among subordinated liens by expressly naming them and that the failure to so mention mortgages in chapter 315, supra, discloses an intent that the word "liens" as used in the statute should not include mortgages. Plaintiff cites us to statutes which sustain its premise and to authorities which support its conclusion. However, the construction which we must give to the word "liens" is governed by a statutory definition.

Section 7279, Compiled Laws of 1913, provides: "Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except when a contrary intention plainly appears."

Section 6699, Compiled Laws of 1913, defines lien. It reads: "A lien is a charge imposed upon specific property by which it is made security for the performance of an act."

Section 6704, Compiled Laws of 1913, provides: "A lien is created: 1. By contract of the parties; or, 2. By operation of law."

Section 6703, Compiled Laws of 1913, declares: "Contracts of mortgage, pledge, bottomry or respondentia are subject to all the provisions of this chapter."

The three statutes last above set forth are found in chapter 86 of the Code of Civil Procedure.

In this state a mortgage conveys no title to, or estate in, the mortgaged property, it is merely "a contract by which specific property is hypothecated as security for the performance of an act." N. D. Comp. Laws 1913, §§ 6725, 6709. Sanford v. Duluth & D. Elevator Co. 2 N. D. 6, 48 N. W. 434; First Nat. Bank v. Paulson, ante, 512, 288 N. W. 465, 471. Such a contract is clearly embraced within the statutory definition of a lien. By direction of § 7279, we must hold that the word "liens," as used in chapter 315, supra, includes mortgages unless the contrary clearly appears. The contrary does not appear from the statute itself nor do we believe it may be inferred from the fact that the legislature in the enactment of former similar statutes has provided that favored liens should be superior to all other "liens, mortgages and encumbrances." Redundancy is a common fault and we cannot assume that the legislature always speaks with unerring certainty. The effect of chapter 315 therefore, is to subordinate the lien of plaintiff's mortgage to that of the defendant state's judgments unless plaintiff's challenge to this statute upon constitutional grounds can be sustained.

The North Dakota Workmen's Compensation Act was enacted pursuant to the police power and is a valid exercise of that power. State ex rel. Amerland v. Hagan, 44 N. D. 306, 175 N. W. 372; State ex rel. Woods v. Hughes Oil Co. 58 N. D. 581, 226 N. W. 586. This act created the North Dakota Workmen's Compensation Fund, a monopolistic state fund to which all employers are required to contribute and out of which all claims arising under the act are paid. N. D. Laws 1919, chap. 162.

Quite obviously the portion of the statute which we have under con-

sideration was enacted to protect the Compensation Fund to the end that workers injured in hazardous employments might have the sure and certain relief contemplated. It is, however, but one of many safeguards which have been provided to maintain the integrity of the fund and insure the payment of the claims of workmen. Employers are required to pay workmen's compensation premiums in advance on the basis of an estimated payroll; if they fail to pay such premiums within thirty days after the beginning of an insurance year, they are by statute declared to be in default, their insurance is suspended and they become personally liable to their employees for any claims arising under the act. The attorney general is directed to sue employers to collect delinquent premiums within twenty days after default occurs. Such actions are given precedence over all other civil actions, the provisional remedies of garnishment and attachment are made available therein, and no exemptions, except absolute exemptions are allowable against any levy under an execution issued upon a judgment rendered therein. N. D. Laws 1919, chap. 162, §§ 8, 11; N. D. Laws 1931, chap. 315.

It is thus apparent, that while the plenary superiority with which the liens of judgments recovered pursuant to chapter 315, supra, are vested, may at times facilitate the collection of workmen's compensation premiums, such superiority, at least in so far as it subordinates the liens of prior mortgages, is not essential to a complete achievement of the public benefit sought to be derived from the act. It is also clear that the enforcement of such superiority would result in the taking of one person's property to pay another person's debt. Conceding that the regulation is one in aid of a proper exercise of the police power, it is, nevertheless, essential to its constitutional validity that such regulation be not manifestly arbitrary or unreasonable. 16 C. J. S. 572. "A police measure must fairly tend to accomplish the purpose of its enactment and must not go beyond the reasonable demands of the occasion." Cooley, Constitutional Limitations, 1231.

In sustaining the validity of the postponement of the plaintiff's mortgage lien, the trial judge relied chiefly upon our decision in the case of Federal Farm Mortg. Corp. v. Falk, 67 N. D. 154, 270 N. W. 885, 113 A.L.R. 724. In that case we upheld the statutory superiority of the lien for hail taxes (N. D. Laws 1933, chap. 137) as against the

lien of a prior mortgage, where the mortgage was executed subsequent to the time that the statute became effective. We did so largely upon the authority of the water rent cases. Provident Inst. for Sav. v. Jersey City, 113 U. S. 506, 28 L. ed. 1102, 5 S. Ct. 612; Dunbar v. New York, 251 U. S. 516, 64 L. ed. 384, 40 S. Ct. 250; Ford Motor Co. v. Kearny, 91 N. J. L. 671, 103 A. 254, L.R.A.1918D, 361; East Grand Forks v. Luck, 97 Minn. 373, 107 N. W. 393, 6 L.R.A.(N.S.) 198, 7 Ann. Cas. 1015. The reasoning of both the Falk Case and the water rent cases, supra, was that where a mortgagee accepted a mortgage in the face of a statute which gave him notice that the lien of his mortgage might be subordinated to some preferred lien, he by his voluntary act gave his consent, as a matter of law, to the postponement of his mortgage lien in the event that the preferred lien should thereafter attach to the mortgaged premises. The mortgagee's consent was implied from the adequacy of the notice and his act in the face of that notice. In those cases, the lien under consideration was one to secure a charge which arose out of the normal use and occupancy of the property upon which the lien fell. Notice to the mortgagee came not alone from the statute providing for the superiority of a lien but also from the nature of the mortgaged property itself. It is to be anticipated that the occupants of residential or business property will use water and that agricultural lands will or may be used to produce crops. Where a use is to be anticipated, it is likewise to be expected that a charge, which arises out of that use, may not be paid, and that the lien to secure the charge may come into being. In the instant case plaintiff finds that his mortgage upon agricultural lands, by statutory provision, has become inferior to the lien of a subsequent judgment for workmen's compensation premiums due the Workmen's Compensation Fund from a bakery business owned and operated by the mortgagor Berzel. Plaintiff is engaged in the business of making agricultural loans secured by mortgages upon farm lands. Agriculture as an industry is exempted from the provisions of the Workmen's Compensation Act. N. D. Laws 1919, chap. 162, § 2. No statutory obligation to pay workmen's compensation premiums can arise out of any reasonably to be anticipated use of farm lands. We do not consider that by reason of the provisions of chapter 315, supra, a mortgagee, engaged in the business of making agricultural loans is required to investigate a mortgagor of

farm lands to determine if he is or may become engaged in any other business in which he will be required to pay Workmen's compensation premiums, nor to protect itself against the eventuality that the mortgagor may at some future time transfer the mortgaged property to one who is so engaged. Clearly an investigation to ascertain the probable future activities of a mortgagor would be wholly futile. Plaintiff accepted defendant Berzel's mortgage as security for a loan, without notice, arising from the statute itself, that its security might be impaired or possibly wiped out, by being subordinated to the lien of a future judgment. In these circumstances, there being no question of actual notice involved, no implication of consent by the mortgagee to a future postponement of his lien can arise. The allowance of the superiority of the lien of the state's judgment for compensation premiums would in this case destroy pro tanto the value of plaintiff's security and take its property to pay the defendant Berzel's debt. It would do so without notice and without plaintiff's consent. The provisions of chapter 315, supra, in so far as they would permit such a result, are unnecessarily drastic and arbitrary and are repugnant to the constitutional guaranty of due process of law and, therefore, violative of § 13 of the Constitution of North Dakota, and § 1 of Article 14 of the Amendments to the Constitution of the United States.

It follows, that the order of the District Court overruling plaintiff's demurrer to the defendant state's answer must be and is reversed.

NUESSLE, Ch. J., and BURR, MORRIS, and CHRISTIANSON, JJ., concur.