Hans A. FISCHER, Plaintiff and Respondent,

v.

Martin HOYER and Hilda Hoyer, his wife,
Defendants and Respondents,

State of North Dakota, Defendant,

and

United States of America, Defendant
and Appellant.

No. 7940.

Supreme Court of North Dakota.

May 16, 1963.

Robert Vogel, U. S. Dist. Atty., Fargo, for appellant, United States of America.

Conmy & Conmy, Bismarck, for respondents Martin Hoyer and Hilda Hoyer.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for respondent Hans A. Fischer.

TEIGEN, Judge (On Reassignment).

This is an appeal from a part of a judgment of foreclosure of a real estate mortgage.

There is only one question to be decided on this appeal. It was stipulated by the parties as follows:

"The only issue to be determined in this appeal is: Did the District Court err in holding and determining that the taxes advanced by the mortgagee on the mortgaged property in the sum of $996.81 and paid subsequent to the assessment and filing of the notice of federal tax lien and interest thereon in the sum of $121.68 were entitled to priority over such federal tax lien?"

The action was instituted to foreclose the first and second mortgages on real property located in McLean County, North Dakota. The first mortgage was dated July 17, 1953, and recorded on July 20, 1953. It was given to the Federal Land Bank of St. Paul and assigned by it to the plaintiff, Hans A. Fischer, a respondent in this appeal, on April 29, 1958. The assignment was recorded on May 3, 1958. The unpaid balance of the mortgage when assigned was $13,696.01. The second mortgage was dated November 5, 1958, and runs in favor of the said Hans A. Fischer in the amount of $6,000 and was recorded December 10, 1958. The United States was named a party defendant. It answered alleging the tax liens filed against the mortgagor on April 2, 1954, covering federal tax liability including accrued interest to date, equalled $52,076.80. It prayed that priority of the different liens be adjudged and that all liens be foreclosed according to the provisions of Section 2410, Title 28, U.S.C.

A judgment of foreclosure was entered on November 15, 1960, in favor of the plaintiff on its first mortgage, interest, taxes advanced, and costs in the amount of $17,429.81. It decreed that the plaintiff had a valid and subsisting lien superior and paramount to defendants' liens. The real property, or so much thereof as may be necessary to satisfy the plaintiff's lien, was ordered sold on foreclosure sale to satisfy plaintiff's lien. It ordered the surplus money, if any, arising from such sale to be brought into court to abide the further order of the court. In its findings of fact the court found the United States the owner and holder of a tax lien in the amount of $51,785.17 as of October 26, 1960, and held that it constituted a second lien on the premises prior and superior to the claims of all other defendants. The plaintiff's second mortgage was also adjudged inferior to the federal tax lien.

At the direction of the mortgagors, the sheriff, on foreclosure sale, sold the premises described in the mortgage as a distinct and entire tract for the sum of $35,000 cash and requested court authority to pay over and dispose of the proceeds of the sale as follows: To the sheriff for fees, commissions and disbursements of sale $364.00; to Hans A. Fischer, mortgagee, the amount of $17,510.56; and to the United States of

America, the balance of $17,125.44, which was approved by the court.

It was stipulated and agreed between the parties, including the United States, that distribution of the proceeds be made by the sheriff in accordance with his report of sale on foreclosure, with the understanding that the United States in no way waived its right to appeal from that portion of the judgment relating to the real estate taxes paid by the plaintiff and included by the court as a part of the mortgage indebtedness. The plaintiff agreed to repay such amount in the event of reversal. The disputed amount included in mortgagee's judgment was for taxes advanced by the mortgagee on October 13, 1958, in the amount of $996.81, plus interest thereon through October 26, 1960, in the amount of $121.68, or a total of $1,118.49. This is the only amount with which we are concerned in this appeal.

The evidence does not establish that the mortgagor is insolvent.

The federal claim of priority is based on several court interpretations of Sections 6321, 6322, and 6323(a) of Title 26, U.S.C., 1958 Edition. Sections 6321 and 6322 create the federal tax lien but do not in themselves determine what priority shall be given. Under these sections no notice of filing is required before a lien becomes valid and effective. Section 6323(a) requires the filing of notices of the lien before it can be valid against mortgagees, pledgees, purchasers and judgment creditors. It argues that the payment of the delinquent taxes by the mortgagee was of benefit to him in the preservation of his security but that such payment was of no benefit to the United States.

Appellant cites and relies on United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, establishing the principle of "first in time is the first in right" in determining the federal priority of liens, and State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348, establishing that the competing lien must be a specific, perfected and choate lien.

We do not believe these two cases are applicable in this case. In the New Britain case the court was dealing with statutory liens, some owned by the city for unpaid taxes and some by the United States. The court held that as between two groups of statutory liens attaching to the same real estate, with no question of insolvency involved, the principle of "the first in time is the first in right" applies. It was proposed that the mortgagee could have paid the delinquent real estate taxes with the amount so paid becoming a part of the mortgage debt covered by the mortgage lien and that the federal tax lien would therefore be invalid as to such amount by virtue of Section 6323(a). However, the court said it need not pass upon the merits of this suggestion as that situation was not presented by the record in the case, and we do not find this question passed on by the Supreme Court in any other case.

The State of Illinois ex rel. Gordon v. Campbell case, supra, involves an insolvent debtor. It involved a contest of priority between a lien for State unemployment compensation taxes filed upon all of the personal property of the employer used by him in connection with his business and a lien on behalf of the United States for federal social security taxes. The court held that the State statute making it unnecessary for the director of labor to describe the property to which the lien is to attach did not make it sufficiently specific or perfected to defeat the priority of the federal lien subsequently filed. In other words, the State's lien was inchoate at the time the federal lien was filed and therefore subsequent. This case deals with competing statutory liens and does not come under Section 6323(a).

The appellant cites United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071, which involved competing federal and municipal tax claims. The federal lien was for employment, withholding and income taxes unpaid, and its lien

was filed August 6, 1948. The town's lien grew out of personal property taxes assessed against the taxpayer for the years 1947 and 1948. The taxpayer was declared insolvent and a temporary receiver was appointed in 1949. In September of 1948, and again in September of 1949, the town sold the property at tax sale for the taxes accruing in the years 1947 and 1948 respectively. It appears the town bid in the property at its own sales. The Supreme Court of New Hampshire held that the town's sale of the taxes resulted in something "in the nature of a judgment" under New Hampshire law and, therefore, the town was a judgment creditor within the meaning of Section 6323(a). The United States Supreme Court reversed the State court and held that Congress in Section 6323(a) used the words "judgment creditor" in the usual conventional sense of a judgment of a court of record and its meaning did not extend to the action of taxing authorities who may be acting judicially where the end result is something "in the nature of a judgment." The court further held that inasmuch as the taxpayer was insolvent, the United States was entitled to priority under R.S. Section 3466.

The appellant next cites United States v. Waddill, Holland & Flinn Co., 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294, wherein the court held a landlord's lien inchoate because it was uncertain as to amount and a municipal tax lien was held inchoate because until levy there was no certainty as to the property subject to the lien. The court in that case held it is a matter of federal law whether a lien created by statute is sufficiently specific and perfected so as to bring it within a claimed exception to the priority of the United States under R.S. Section 3466 which governs claims of the United States against insolvent debtors.

In the case of United States v. Security Trust & Savings Bank, 340 U.S. 47, 7 S. Ct. 111, 95 L.Ed. 53, also cited by appellant, priority was accorded to a federal tax lien recorded after an attachment lien

but prior to the time the attaching creditor obtained judgment. In this case appellant argues the rule of choateness was extended to "non-insolvency" cases. The court held the judgment creditor was not entitled to the benefits of Section 6323(a) because he was not a judgment creditor when the federal lien attached. The attachment lien gave the attachment creditor no right to proceed against the property until he obtained judgment.

The appellant next argues that the principle was also extended to nonstatutory contractual liens in United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510, but a careful reading of that case with its dissenting opinion leads us to conclude the court decided the contesting lien claimant was not a "mortgagee" within the meaning of Section 6323(a), Title 26, U.S.C., and therefore not of the preferred class.

In a very recent case entitled United States v. Buffalo Savings Bank, decided January 7, 1963, 371 U.S. 228, 83 S.Ct. 314, 9 L.Ed.2d 283, the Supreme Court of the United States held that in the foreclosure of a mortgage, it was improper for the court to tax, as a part of the expenses of the sale, real estate taxes and other assessments levied upon the subject land prior to the satisfaction of a prior tax lien of the United States. It is a per curiam opinion and its holding is based upon the court's decision in United States v. City of New Britain, supra, and in comment thereon states:

"That case rules this one, for there the Court quite clearly held that federal tax liens have priority over subsequently accruing liens for local real estate taxes, even though the burden of the local taxes in the event of a shortage would fall upon the mortgagee whose claim under state law is subordinate to local tax liens."

Both cases are distinguishable from the instant case in that in each of those cases the unpaid taxes were statutory liens and

the claimant did not come within the definition of a mortgagee as described in Section 6323(a).

The appellant then cites two Circuit Court of Appeals cases: United States v. Christensen, 9 Cir., 269 F.2d 624, and United States v. Bond, 4 Cir., 279 F.2d 837. Both of these cases gave priority to federal tax liens over subsequent real estate taxes paid by the mortgagee and applied the choate lien test, citing in support thereof United States v. City of New Britain, supra. A similar result was obtained in Union Central Life Insurance Co. v. Peters, 361 Mich. 283, 105 N.W.2d 196, and Bank of America National Trust & Savings Ass'n v. Embry, 188 Cal.App.2d 425, 10 Cal.Rptr. 602. These cases are not controlling of the federal question and we believe were erroneously decided. We do not feel the New Britain case is authority for the propositions announced in these cases.

Section 6321, Title 26, U.S.C., establishes a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to a person liable to pay any tax, and who neglects or refuses to pay the same after demand. Section 6323(a) provides that a lien provided by Section 6321 shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed.

In deciding questions concerning the relevant priorities of a federal tax lien and other liens, the State law determines the nature and extent of the property interests of the taxpayer and the federal law determines the priority of the competing liens themselves. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365; United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192; United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed. 2d 1135; and United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed.2d 264.

Congress has said, Section 6323(a), supra, that a federal tax lien shall not be valid as against a mortgagee until notice thereof has been filed.

The precise question has not heretofore been decided by the United States Supreme Court. To arrive at their decisions, the Circuit Court of Appeals cases and the State Supreme Court cases above cited have transplanted rules developed for the classification of interests which did not enjoy the statutory preference of a mortgagee. It cannot be said that Congress intended that the preferred (mortgagee, pledgee, purchaser and judgment creditor) and the unpreferred interest should be classified under the same rules. We quote from the very scholarly dissenting opinion of Judge Haynsworth, Circuit Judge of the United States Court of Appeals, Fourth Circuit, the case of United States v. Bond, supra, wherein he states on page 848 of 279 F.2d as follows:

"When the Supreme Court adopted the rule of 'the first in time is the first in right' (authorities cited) for the purpose of classifying liens competing, without the benefit of a statutory preference, with the tax lien, substantial qualification was essential if the tax lien was not to be emasculated. Among the many liens and priorities recognized by the laws of the states, most were far from the standing of those interests which Congress had selected for preferential treatment. Without substantial qualification of a simple rule of priority in time and a reserved right of federal classification, such interests, created and controlled by the states, would threaten frustration of the tax lien.

"A state's provisional remedies may provide a number of interlocutory liens, but the possessor of such a lien need not be classified with the judgment creditor whom the statute prefers. The litigant who commences his action by attachment entertains some hope of becoming a judgment creditor, but he may encounter many

a pitfall along the way. As a judgment creditor, he is in the embryonic stage. His attachment may be perfected in itself, but, viewed as a first step toward ascent to the preferential status of a judgment creditor, it is neither perfected nor completed.

"The Supreme Court might have said, as Mr. Justice Jackson did say, (authorities cited) that all interests should be deferred to the tax lien save only those which Congress chose to prefer. Resort to the inchoate test, applied to the competing lien, approached the same result. At least, it avoided the necessity of treating the lien products of a state's provisional remedies as judgments." (Authorities cited.)

We turn now to State law to determine the nature and extent of the property interests of the taxpayer as it exists in this case.

■ The mortgagor had hypothecated his property for the performance of the acts described in the mortgage, to wit, the payment of the mortgage debt, the payment of taxes, insurance premiums, etc. Section 35–02–01 N.D.C.C. The mortgage created a lien on his land. Crandell v. Barker, 8 N.D. 263, 78 N.W. 347; Colonial & United States Mortgaging Co. v. Northwest Thresher Co., 14 N.D. 147, 103 N.W. 915, 70 L.R.A. 814; Nash v. Northwest Land Company, 15 N.D. 566, 108 N.W. 792; Capital Trust & Savings Bank v. Wallace, 45 N.D. 182, 177 N.W. 440; State v. Divide County, 68 N.D. 708, 283 N.W. 184; First National Bank of Waseca v. Paulson, 69 N.D. 512, 288 N.W. 465; Federal Farm Mortgage Corp. v. Berzel, 69 N.D. 760, 291 N.W. 550; and Mechtle v. Topp, 78 N.D. 789, 52 N.W.2d 842. It is a special lien. Section 35–02–02, N.D.C.C.

The fee simple title of the mortgagor thus became subject to the mortgage which is a special lien on the land.

The mortgage in question contained a clause permitting the mortgagee to pay accrued taxes on the land to protect his security and reads as follows:

"In the event mortgagor fails to pay when due any taxes, liens, judgments or assessments, lawfully assessed against property herein mortgaged, or fails to maintain insurance as hereinbefore provided, mortgagee may make such payment or provide such insurance, and the amount(s) paid therefor shall become a part of the indebtedness secured hereby and bear interest from the date of payment at the rate of six per cent per annum."

■ This contractual clause is in conformity with our statutes which provide that when a holder of a special lien is compelled to satisfy a prior lien for his protection, he may enforce payment of the amount so paid by him as a part of the claim for which his own lien exists. Section 35–01–07, N.D.C.C. Foster v. Furlong, 8 N.D. 282, 78 N.W. 986; and Merchants' State Bank of Fargo v. Tufts, 14 N.D. 238, 103 N.W. 760.

■ Real estate taxes subsequently levied constitute a prior lien to the mortgage lien. Section 57–02–40, N.D.C.C. Where the mortgagor fails to pay the real estate taxes, the mortgagee, for his own protection, is entitled by virtue of the statute (Section 35–01–07, supra) to pay such taxes and to enforce payment of the amount so paid by him as a part of the claim for which his mortgage lien exists. The payment of the taxes by the mortgagee extinguishes the original tax lien and the amount paid is secured by the mortgage by force of statute and by the covenants of the mortgage. It is a charge upon the mortgaged premises in addition to the original mortgage debt and of the same grade and rank. The mortgage lien attaches to such payment. Omlie v. O'Toole, 16 N.D. 126, 112 N.W. 677. This rule is the general rule. 36 Am.Jur., Mortgages, Secs. 341, 342 and 346; 59 C.J.S. Mortgages § 325. It constitutes a single and indivisible demand and claim for taxes paid are col-

lateral and subordinate to the mortgage and may not be separated and collected in an independent action. 36 Am.Jur., Mortgages, Sec. 352; 59 C.J.S. Mortgages § 325b.

■ There is only one form of action in North Dakota for the protection of private rights known as a civil action, Rule 2, N.D.R.Civ.P., and the district court has the power, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes. Section 27–05–06, N.D.C.C. In a mortgage foreclosure, the plaintiff is entitled to reimbursement for taxes paid as a part of the mortgage debt, Omlie v. O'-Toole, supra, and if he fails to seek reimbursement in the foreclosure his right is gone. To permit him to maintain another suit for reimbursement would permit him to split the action. Warnecke v. Foley, 234 Iowa 348, 11 N.W.2d 457; Day v. Brenton, 102 Iowa 482, 71 N.W. 538. The causes of action may not be divided. Jacobson v. Mutual Benefit Health & Accident Ass'n, 73 N.D. 108, 11 N.W.2d 442; 1 Am.Jur.2d, Actions, Sec. 129.

It is a lien upon everything that would pass by a grant to the property, Section 35–02–11, N.D.C.C., and is valid as to third persons and a second mortgagee with notice. Union National Bank of Oshkosh v. Moline, Milburn & Stoddard Co., 7 N.D. 201, 73 N.W. 527.

■ For these reasons the extent of the property interest of the mortgagor in the subject property under State law is subject to the rights of the mortgagee. He has a lien thereon to secure his indebtedness, including subsequent taxes paid. This is a usual and ordinary right of which we must assume Congress had knowledge when it enacted Section 6323(a) and we quote again from the dissenting opinion of Judge Haynsworth, 279 F.2d page 851, as follows:

"Provisions in mortgages requiring or permitting the mortgagee to discharge ad valorem tax liens and extending the mortgage lien to such disbursements, as well as to the expense of enforcement of the mortgagee's rights, are commonplace. There is nothing novel in recognition of the fact that the protection of the mortgage lien extends to such disbursements and expenses, made pursuant to such provisions, as fully as to the principal of the mortgage debt itself. It is a usual and conventional right of a mortgagee. When Congress created the preference, such rights of the mortgagee were generally recognized in commerce and in law. If we are to give the language of the statute its usual and ordinary meaning, we cannot deny to the mortgagee his usual and ordinary rights. Since the statute confers the preference upon the mortgagee, it seems to require us to recognize the preference, at the least, to the extent that his preference has been traditionally and commonly recognized in the state courts. I see no reason to suppose that Congress intended the preference it commanded to differ in kind and quality from the preference the selected classes have enjoyed historically and, in commercial circles, are generally thought to have."

As we stated above, the question of the priority of the competing claims is determined by federal law. By the enactment of the statute Congress has declared the federal policy to be that a tax lien of the United States shall not be valid as against the mortgagee until notice thereof has been filed. Section 6323(a), supra. The mortgagee's lien was complete prior to the filing of the United States tax lien. It also provided for interest, statutory attorney's fees and costs of foreclosure pursuant to statute in the event of foreclosure. Interest which accrued on the indebtedness subsequent to the filing of the federal tax lien and foreclosure costs were allowed by the court and are not challenged by the appellant in this case. We see no reason why

subsequently accruing taxes paid by the mortgagee should not enjoy the same status.

The question, we believe, is open in the Supreme Court of the United States. We believe the Congress has decided the question and its statute should govern our decision. It requires a recognition of the preference a mortgagee has enjoyed generally and historically.

A contrary holding will encourage prompt mortgage foreclosures for nonpayment of real estate taxes. Bidders at the sheriff's sale will deduct the unpaid real estate taxes in computing their bids because, after sheriff's deed, the purchaser must then pay the real estate taxes in order to record his deed, Section 11–18–02, N. D.C.C., and to remove the real estate tax lien which is prior to the mortgage, Section 57–02–40, N.D.C.C. The federal tax lien will have been removed as a lien against the mortgaged property by the foreclosure of the mortgage which was filed prior to the filing of the federal tax lien, Section 6323(a), Title 26, U.S.C. We do not believe it presumptuous to assume Congress recognized this when it enacted the legislation providing a prior mortgagee shall occupy a preferred position to a subsequently filed federal tax lien.

Judgment is affirmed.

STRUTZ and ERICKSTAD, JJ., concur.

MORRIS, Chief Justice (dissenting).

On July 17, 1953, Martin Hoyer and his wife executed a mortgage on certain lands in favor of the Federal Land Bank of Saint Paul. This mortgage was recorded July 20, 1953, and assigned to the plaintiff, Fischer, on April 29, 1958. The assignment was recorded May 3, 1958. On October 13, 1958, the assignee Fischer paid past due real estate taxes levied against the land.

On April 2, 1954, the United States filed in the office of the register of deeds of the county wherein the land was situated a federal tax lien pursuant to the provisions of Sections 6321, 6322, and 6323(a), Title 26, U.S.C., based upon the assessment of federal taxes against the landowner and mortgagor, Martin Hoyer.

Subsequent to the recording of the federal lien, taxes were levied pursuant to the laws of the State of North Dakota, which remained a lien on the land until they were paid by Fischer on October 13, 1958. Section 57–02–40, NDCC, provides that:

"Taxes upon real property are a perpetual paramount lien thereon against all persons, except the United States and this state."

Section 35–01–07, NDCC, provides that:

"When the holder of a special lien is compelled to satisfy a prior lien for his own protection, he may enforce payment of the amount so paid by him as a part of the claim for which his own lien exists."

The mortgage in question contained a provision that in event the mortgager failed to pay lawful taxes when due, the mortgagee might make the payment and the amount thereof would become a part of the indebtedness secured by the mortgage. The right vested in the mortgagee by the statute and by the provision in the mortgage is in accord with the general rule that where the mortgagor neglects to pay taxes that are a paramount lien on the property, the mortgagee may pay them and add them to the principal as a part of the sum secured by the mortgage. 59 C.J.S. Mortgages § 178e; 36 Am.Jur., Mortgages, Sections 341, 342. The reason for the rule is that the taxes being a paramount lien, the protection of the security by the payment of taxes benefits not only the mortgagee but also the mortgagor who owns the property and has a right of redemption and junior lienholders who also rely upon the property as security for their liens. In 36

Am.Jur., Mortgages, Section 346, it is said:

"Some authorities even uphold the view that the junior mortgagee is entitled to reimbursement in such case in preference to the claim of the senior mortgagee. Other authorities hold that the junior mortgagee, by paying taxes on the mortgaged premises, acquires a lien of the same rank and dignity as that of his mortgage lien."

In the case before us, the taxes levied by state authority which were paid by the mortgagee were subject and inferior to the tax lien of the United States. As against the United States they never became a paramount lien. The majority opinion holds that when the mortgagee paid the state taxes, the lien therefor was extinguished and the amount so paid became a part of the principal debt secured by the mortgage and was therefore a part of the prior mortgage lien and as such became superior to the federal lien. I cannot agree with that conclusion.

At the time the United States acquired its superior tax lien, the mortgage was for a definite amount and if we consider interest, it secured an amount that could be calculated to any certain date pursuant to the terms of the mortgage. While it is true that the mortgagee had the right to pay past due taxes which could as against the mortgagor and inferior lienholders be added to the principal debt, this right permitted the addition of an amount that was uncertain, indefinite and impossible of calculation or determination under the terms of the mortgage. Valuations of property and tax levies to which they are applied vary from year to year. The mortgagee's right was to pay and add to the principal of the mortgage debt such amount or amounts as might result in the various years from the application of the taxing process. At the time the lien of the United States was filed the taxes involved in this controversy were not determinable. All that then existed was a right to tax in an indefinite amount which would be determined from year to year. Insofar as such amounts might be paid by the mortgagee under the terms of the mortgage they were inconsummate as against the mortgagor and as a lien against the land. In both aspects they were definitely inchoate.

In United States v. Security Trust and Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, the court held that a federal tax lien was superior to an inchoate attachment lien obtained under California law. In United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, the court referred to the inchoate attachment lien involved in the Security Trust and Savings Bank case, and said:

"Such inchoate liens may become certain as to amount, identity of the lienor, or the property subject thereto only at some time subsequent to the date the federal liens attach and cannot then be permitted to displace such federal liens. Otherwise, a State could affect the standing of federal liens, contrary to the established doctrine, simply by causing an inchoate lien to attach at some arbitrary time even before the amount of the tax, assessment, etc., is determined."

Questions similar to the one now before us have been considered by federal and state courts. In United States v. Christensen, 9 Cir., 269 F.2d 624, it is said:

"Payment of state taxes on mortgaged property by a prior mortgagee after federal tax liens are recorded does not give the mortgagee a lien for such local taxes superior to the appellant's prior tax liens."

In United States v. Bond, 4 Cir., 279 F.2d 837, the court considered a claim by a mortgagee for reimbursement for real estate taxes paid to the county. These taxes had accrued after federal tax liens had been recorded. It was held that the federal tax liens were superior to the claim of the

mortgagee for real estate taxes paid to the county. The court states:

"We have derived an indelible impression from the cases (involving determination of priority of federal tax liens over competing liens) decided by the Supreme Court, which reveal the persistent application of the choate lien test, *first in insolvency cases, then in statutory lien cases, and finally in nonstatutory contractual lien cases.*"

Among the cases in state courts applying the choate lien test in determining the priority of federal tax liens over state taxes paid by a mortgagee are the following: Metropolitan Life Insurance Co. v. United States, 9 A.D.2d 356, 194 N.Y.S.2d 168, and Union Central Life Insurance Co. v. Peters, 361 Mich. 283, 105 N.W.2d 196.

If the taxes paid by the mortgagee be considered advances under the terms of the mortgage, the mortgage lien to the extent of the sum advanced was not perfected until payment. There was no certainty as to payment or the amount until after the federal lien attached. The rule of priority enunciated by the cases above cited is applicable to advances. American Surety Company of New York v. Sundberg, 58 Wash.2d 337, 363 P.2d 99. It is a rule of the federal courts and should be followed in this case. I would reverse the judgment.

BURKE, J., concurs.